**Darren D. MINOR, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–01–328–CR.**

Court of Appeals of Texas,
Fort Worth.

Nov. 14, 2002.

Dean M. Swanda, Arlington, for appellant.

Tim Curry, Crim. DA; Charles M. Mallin, Asst. Crim. DA & Chief of the Appellate Section; & Edward L. Wilkinson, Mitchell W. Poe & Edward C. Lasater, Fort Worth, for appellee.

PANEL F: CAYCE, C.J.; DAY and WALKER, JJ.

## OPINION

SUE WALKER, Justice.

### I. INTRODUCTION

A jury found appellant Darren D. Minor guilty of the offense of murder, found that Minor committed the murder under the influence of sudden passion arising from an adequate cause, and assessed Minor's punishment at eighteen years' confinement. In four issues on appeal, Minor contends that the trial court erroneously charged the jury on the definition of reasonable doubt, erroneously permitted the testimony of a witness who violated "the Rule," and challenges the constitutionality of article 37.07, section 3(a) of the code of criminal procedure and the factual sufficiency of the evidence to support his conviction. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.2002). We will affirm.

### II. BACKGROUND FACTS

On December 23, 1998, appellant Darren Minor and his girlfriend drove to a house on Lester Grange Street to collect some money from Carl Porter. Minor and Porter started arguing about the money, and Bobby Nelson, who owned the house, told Minor and Porter to take their argument outside. At this point, Minor began arguing with Nelson. Minor and Nelson shoved each other and soon engaged in a full-fledged fight with both men throwing punches. When Minor and Nelson became too exhausted to continue fighting, Porter, Minor, and Nelson all walked out of the house.

While Nelson stood on the front porch, Minor walked over to his van and retrieved a sawed-off shotgun. Minor walked up to Nelson, and Nelson held out his hands saying, "I'm not moving anywhere. I'm not going anywhere. Do what you're going to do." Minor stood approximately three feet from the front porch and shot Nelson. Nelson died. At trial, Minor said he shot Nelson because he believed Nelson was concealing some type of weapon.

### III. REASONABLE DOUBT JURY INSTRUCTION

In his first issue, Minor claims that the trial court erred by including, in the abstract portion of the charge, the statement: "It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt." Minor timely objected to this language and asserted that it erroneously defined reasonable doubt "by what it was not."

Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim.App.1994). Initially, we must determine whether error occurred. *Id.* at 731–32. If so, we must then evaluate whether

sufficient harm resulted from the error to require reversal. *Id.* Error in the charge, if timely objected to in the trial court, requires reversal if the error is "calculated to injure the rights of the defendant," which means there must be *some* harm to the accused from the error. Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 1981); *see Abdnor,* 871 S.W.2d at 731–32; *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim. App.1985) (op. on reh'g). In other words, a properly preserved error will call for reversal as long as the error is not harmless. *Almanza,* 686 S.W.2d at 171. In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.; see also Ovalle v. State,* 13 S.W.3d 774, 786 (Tex.Crim.App. 2000).

■ The language objected to by Minor is a direct quote from the *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991) reasonable doubt definition disavowed by the court of criminal appeals in *Paulson v. State,* 28 S.W.3d 570, 573 (Tex.Crim.App. 2000). Minor contends that the inclusion of this reasonable doubt instruction in the charge constituted error precisely because the court of criminal appeals in *Paulson* disavowed its use and indicated that "the better practice is to give no definition of reasonable doubt at all to the jury." *Id.* The State responds that just because the better practice is not to use a reasonable doubt definition does not mean that inclusion of the language at issue here constitutes error.

The appellate courts that have addressed this issue are split on whether use of this language in the charge is error. *See Brown v. State,* 91 S.W.3d 353, 358–59

(Tex.App.-Eastland Aug. 2002, no pet. h.) (holding that it was not error to include a *Geesa* definition of reasonable doubt in the charge to the jury); *Carriere v. State,* 84 S.W.3d 753, 759 (Tex.App.-Houston [1st Dist.] 2002, pet. filed) (holding trial court did not err in giving exact instruction given in the present case because it was "not the sort of instruction prohibited by *Paulson*"); *Rodriguez v. State,* No. 03–01–00573–CR, slip op. at 8–10, 2002 WL 1723875, at *4–6, —— S.W.3d ——, —— —— —— (Tex.App.-Austin July 26, 2002, pet. filed) (holding trial court erred by giving the exact instruction given in this case); *Phillips v. State,* 72 S.W.3d 719, 721 (Tex. App.-Waco 2002, no pet.) (same); *Dooley v. State,* 65 S.W.3d 840, 843–44 (Tex.App.-Dallas 2002, pet. ref'd) (holding use of *Geesa* reasonable doubt instruction did not render jury verdict "erroneous as a matter of law"). Having reviewed these cases, we agree with the following analysis of the First District Court of Appeals in the *Carriere* case:

> According to *Paulson,* when the court is evaluating a jury charge for a reasonable-doubt-definition error, we must first determine if a definition of reasonable doubt exists in the jury charge. *Paulson,* 28 S.W.3d at 573. If not, the charge does not violate *Paulson.* In our case, the trial court instructed the jury "it is not required that the prosecution prove guilt beyond all doubt." This instruction does not lessen the State's burden of proof, especially in light of the second sentence which correctly repeats the State's burden that, "it is required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt." The charge was proper because it did not define reasonable doubt—it merely instructed the jury that appellant's guilt must be proved beyond a reasonable doubt, not beyond all possible doubt.

*Carriere,* 84 S.W.3d at 759. The exact same language was utilized in the charge at bar, and we, like the *Carriere* court, conclude that this language does not constitute a definition of reasonable doubt and, therefore, does not violate *Paulson.* Because the charge here did not give a reasonable doubt definition, the first-step in our charge-error analysis ends the inquiry. *Abdnor,* 871 S.W.2d at 731. No error occurred by virtue of the instruction given here. *See Carriere,* 84 S.W.3d at 759. We overrule Minor's first issue.

## IV. Violation of the Rule by State's Witness

In his second point, Minor contends that the trial court erred by permitting Nelson's sister, Robbie, to testify because she was present in the courtroom during the trial in violation of Rule 614 of the rules of evidence ("the Rule").

■■■ Texas Rule of Evidence 614 provides for the exclusion of witnesses from the courtroom during trial. Tex.R. Evid. 614. The purpose of the Rule is to prevent corroboration, contradiction, and the influencing of witnesses. *Potter v. State,* 74 S.W.3d 105, 110 (Tex.App.-Waco 2002, no pet.) (citing *Bell v. State,* 938 S.W.2d 35, 50 (Tex.Crim.App.1996)). When the Rule is invoked, a witness should not hear testimony in the case or talk to any other person about the case without the court's permission. *White v. State,* 958 S.W.2d 460, 462 (Tex.App.-Waco 1997, no pet.). While the trial court is obligated to exclude witnesses from the courtroom during other witnesses' testimony, the court's decision to allow testimony from a witness who has violated the Rule is discretionary. *Bell,* 938 S.W.2d at 50. We review a trial court's decision to allow testimony from a witness who has violated the Rule under an abuse of discretion standard. *Guerra v. State,* 771 S.W.2d 453, 474–75 (Tex.

Crim.App.1988), *cert. denied,* 492 U.S. 925, 109 S.Ct. 3260, 106 L.Ed.2d 606 (1989).

■■■ We perform a two-step analysis in determining whether a trial court has abused its discretion in allowing a violation of the Rule. *Loven v. State,* 831 S.W.2d 387, 399 (Tex.App.-Amarillo 1992, no pet.). First, we ascertain what kind of witness was involved. *See Guerra,* 771 S.W.2d at 476. Violations of the Rule involve two main categories of witnesses: (1) witnesses who have been sworn or listed as witnesses in the case and either hear testimony or discuss another's testimony; and (2) persons who were not intended to be witnesses and are not connected with the case-in-chief but who have, due to events during trial, become necessary witnesses. *Id.* (citing *Green v. State,* 682 S.W.2d 271, 271 (Tex.Crim.App.1984), *cert. denied,* 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985)). If the witness was one who had no connection with either the State's case-in-chief or the defendant's case-in-chief and who, because of a lack of personal knowledge regarding the offense, was not likely to be called as a witness, *then no abuse of discretion can be shown. Id.; Phillips v. State,* 64 S.W.3d 458, 459–60 (Tex.App.-Houston [1st Dist.] 2001, no pet.); *Loven,* 831 S.W.2d at 399.

■■■ Under the second step of the analysis, we must determine: (1) whether the witness actually conferred with or heard the testimony of another witness without court permission; and (2) whether "the witness's testimony contradict[ed] the testimony of a witness he actually heard from the opposing side or corroborate[d] the testimony of another witness he actually heard from the same side on an issue of fact bearing upon the issue of guilt or innocence." *Loven,* 831 S.W.2d at 399. If both of the above criteria are met, then the trial court abused its discretion. *Id.*

■ We first determine what kind of witness Robbie was. *See Guerra*, 771 S.W.2d at 476. The record reflects that Robbie did not witness the offense and had no connection to either the State's or Minor's case-in-chief. Instead, during the State's case-in-chief, the medical examiner testified on cross-examination that it was possible that at the moment Nelson was shot he was keeping his right hand to the opposite side, away from Minor. Minor testified during the presentation of his case-in-chief that he shot Nelson because he believed Nelson was hiding a weapon behind his back in his right hand. Thus, on rebuttal, the State sought to introduce Robbie's testimony that Nelson was left-handed. The State asked Robbie a total of two questions:

> Q. Ms. Nelson, how are you related to Bobby Nelson, the victim in this case?
>
> A. I'm his sister.
>
> Q. And was Bobby left-handed or right-handed?
>
> A. He was left-handed.
>
> [PROSECUTOR]: No further questions.

When, as here, the witness has no connection with either the State's or the defendant's case-in-chief and was not likely to be called as a witness because of a lack of personal knowledge regarding the offense, the trial court does not abuse its discretion in allowing the testimony. *Guerra*, 771 S.W.2d at 476; *Phillips*, 64 S.W.3d at 460; *Loven*, 831 S.W.2d at 399. We hold that the trial court did not abuse its discretion in allowing Robbie to testify that Nelson was left-handed. We overrule Minor's second issue.

## V. CONSTITUTIONAL CHALLENGE TO ARTICLE 37.07

In his third issue, Minor contends that article 37.07, section 3(a) of the code of criminal procedure, as applied to him in this case to permit the introduction of an extraneous offense during the punishment phase of his trial, is unconstitutionally violated his Fifth Amendment due process rights.

■ Article 37.07, section 3(a)(1) provides, in pertinent part:

> [E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, and opinion regarding his character, the circumstances of the offense for which he is being tried, and ... any other evidence of an extraneous crime or bad act.

TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1). Evidence is relevant to the assessment of punishment if it provides information about the defendant's life and characteristics. *Roethel v. State*, 80 S.W.3d 276, 278 (Tex.App.-Austin 2002, no pet.); *Brooks v. State*, 961 S.W.2d 396, 398 (Tex.App.-Houston [1st Dist.] 1997, no pet.).

■ Article 37.07, section 3(a) was amended in 1993 to permit the admission of evidence of unadjudicated extraneous offenses at punishment hearings. *See* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, §§ 5.05–5.06, 1993 Tex. Gen. Laws 3586, 3759 (amended 1995) (codified at TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1)). Since then, courts have consistently held that statutory authorization of the admission of extraneous unadjudicated offenses at the punishment phase does not violate an accused's constitutional rights to due process and equal protection. *See Parker v. State*, 51 S.W.3d 719, 726 (Tex.App.-Texarkana 2001, no pet.); *Enlow v. State*, 46 S.W.3d 340, 347 (Tex.App.-Texarkana 2001, pet. ref'd), *cert. denied*, —— U.S. ——, 122 S.Ct. 2675, 153 L.Ed.2d 847

(2002); *see also Infante v. State*, 25 S.W.3d 725, 726–27 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd) (holding because defendant's illegal alien status constituted penal offense, trial court could consider status at punishment phase of trial). Indeed, the court of criminal appeals has long rejected the argument that the parallel provision in article 37.071 authorizing the admission of unadjudicated extraneous offenses at the punishment phase of a capital trial violates an accused's due process rights. *See Banda v. State*, 890 S.W.2d 42, 62 (Tex.Crim. App.1994), *cert. denied*, 515 U.S. 1105, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995) (holding that unadjudicated offenses may be introduced during capital sentencing); *see also Harris v. State*, 827 S.W.2d 949, 962 (Tex. Crim.App.) (same), *cert. denied*, 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992); *Ramirez v. State*, 815 S.W.2d 636, 653 (Tex.Crim.App.1991) (same). We likewise hold that article 37.07, section 3(a) is not unconstitutional as applied to Minor in this case. In light of the plain wording of the statutory provision, we cannot agree that the introduction of unadjudicated extraneous offense evidence at the punishment phase of Minor's trial deprived him of due process. We overrule Minor's third issue.

### VI. Sufficiency of the Evidence

In his fourth and final issue, Minor challenges the factual sufficiency of the evidence to support his conviction. Minor points out that the State's case was premised primarily on Porter's testimony. Minor admits that Porter testified he, Minor, shot Nelson as Nelson stood on the porch unarmed. Minor emphasizes, however, that Porter is a drug addict who has been convicted of shoplifting and who was also good friends with Nelson. Minor additionally points out that some of Porter's testimony was directly contradicted by the physical evidence in the case. Conse-

quently, Minor claims that his version of the events was more credible.

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim.App.2000); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence. *Johnson*, 23 S.W.3d at 11. Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the verdict, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Id.*

In performing this review, we are to give due deference to the fact finder's determinations. *Id.* at 8–9; *Clewis*, 922 S.W.2d at 136. In fact, an appellate court is governed by the legal axiom that the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Bottenfield v. State*, 77 S.W.3d 349, 355 (Tex.App.-Fort Worth 2002, pet. ref'd). Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice. *Johnson*, 23 S.W.3d at 9, 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim.App.1997).

After viewing all of the evidence in the light most favorable to the jury's verdict and deferring to the fact finder's determinations as to the credibility of the witnesses, we hold that the evidence is factually sufficient to support the jury's finding that Minor committed the offense of murder. We overrule Minor's fourth issue.

## VII. Conclusion

Having overruled Minor's four issues, we affirm the trial court's judgment.