NUMBER 13-08-00562-CR


 

COURT OF APPEALS


 

THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


JOHN DAVID URBINA, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 275th District Court


 of Hidalgo County, Texas.


 


MEMORANDUM OPINION





Before Justices Rodriguez, Benavides, and Vela


Memorandum Opinion by Justice Benavides



 Appellant, John David Urbina, appeals from his conviction by a jury for capital
murder. See Tex. Penal Code Ann. § 19.03(a)(2) (Vernon Supp. 2009). Urbina raises
eleven issues on appeal. We affirm.

I. Background (1)

 On April 22, 2007, Urbina lived in the 3200 block of South Closner in Edinburg,
Texas, at a known "crack house." That evening, Miguel Aguilar was murdered during the
course of a robbery at The Gas Depot convenience store in Edinburg, where Aguilar
worked as a clerk. The following day, the "crack house" was raided by the Edinburg police,
and Urbina, among others, was taken to the police station to be interviewed. Urbina
cooperated with the investigators, tested negative for gun residue, passed a polygraph
examination, and was allowed to leave the police station. During the week-long
investigation into Aguilar's murder, Urbina visited the police station multiple times, usually
at the request of Robert Alvarez, an investigator with the Edinburg Police Department. 

 On May 2, 2007, Urbina gave a written and oral statement to Detective Alvarez in
which Urbina indicated that he procured a handgun for "Gil," who then robbed The Gas
Depot and killed Aguilar, while Urbina acted as a scout and a lookout. (2) Both the written
and oral statements were admitted into evidence over Urbina's objection and motion to
suppress. The jury charge authorized the jury to find Urbina guilty of capital murder,
murder, or aggravated robbery as either the principal actor or as a party to the offenses. 
The jury returned a general verdict of guilty of capital murder, and the trial court imposed
a sentence of life imprisonment without parole. See id. § 12.31(a)(2) (Vernon Supp. 2009)
(providing a sentence of life without parole in capital murder cases when the State does
not seek the death penalty). This appeal ensued.

II. Motion to Suppress

 In his first issue, Urbina argues that the trial court erred by denying his motion to
suppress. Urbina contends that the oral and written statement he made was involuntary
because it was induced by promises made to him by Detective Alvarez. See Tex. Code
Crim. Proc. Ann. art. 38.21 (Vernon 2005); Martinez v. State, 127 S.W.3d 792, 794 (Tex.
Crim. App. 2004). We disagree.

 "Generally, a trial court's ruling on a motion to suppress is reviewed by an abuse of
discretion standard." Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). We use
a bifurcated standard, giving "'almost total deference to a trial court's determination of the
historical facts that the record supports especially when the trial court's fact findings are
based on an evaluation of credibility and demeanor.'" Amador v. State, 221 S.W.3d 666,
673 (Tex. Crim. App. 2007) (quoting Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997)). We "afford the same level of deference to a trial court's ruling on 'application of
law to fact questions,' or 'mixed questions of law and fact,' if the resolution of those
questions turns on an evaluation of credibility and demeanor." Id. (quoting Montanez v.
State, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006). We "review de novo 'mixed questions
of law and fact' that do not depend upon credibility and demeanor." Id. (quoting Montanez,
195 S.W.3d at 109).

 "At a hearing on a motion to suppress, the trial court is the sole and exclusive trier
of fact and judge of the credibility of witnesses as well as the weight to be given their
testimony." Garza v. State, 213 S.W.3d 338, 346 (Tex. Crim. App. 2007). As such, "the
trial judge may choose to believe or disbelieve any or all of a witness's testimony." Id.

 "A statement of an accused may be used in evidence against him if it appears that
the same was freely and voluntarily made without compulsion or persuasion . . . ." Tex.
Code Crim. Proc. Ann. art. 38.21. "[F]or a promise to render a confession invalid under
[a]rticle 38.21, the promise must be positive, made or sanctioned by someone in authority,
and of such an influential nature that it would cause a defendant to speak untruthfully." 
Martinez, 127 S.W.3d at 794. 

 At the hearing on his motion to suppress, Urbina asserted that Detective Alvarez
had used him as a confidential informant to help Detective Alvarez apprehend drug dealers
through the use of "controlled buys." Urbina stated that Detective Alvarez used him in this
manner six or seven times, that Detective Alvarez would give him the money to make a
drug purchase, that he would make the purchase, that Detective Alvarez would arrest the
dealer, and that Detective Alvarez would let him keep the drugs, which he would then
consume. Urbina further testified that Detective Alvarez had also "made" some charges
against Urbina "disappear."

 Vanessa Baldazo, Urbina's fiancé, testified at the motion to suppress hearing that
Detective Alvarez gave Urbina money on several occasions so that Urbina could buy gas,
groceries, cigarettes, food, and soda. Baldazo saw Detective Alvarez take the money out
of his own wallet and give it to Urbina. Baldazo also stated that she had asked Detective
Alvarez to give her money to help her pay her bills and that Detective Alvarez promised to
get her $250, although he never gave her any money. 

 Urbina and Baldazo both testified that during investigation into the murder, Detective
Alvarez continually affirmed that Urbina was not going to be in any trouble and that
everything was "okay." Urbina stated that, prior to recording his statement, he and
Detective Alvarez drafted the statement in such a way that the statement could "be
presented proper [sic] in court." Urbina asserted that Detective Alvarez needed the
statement of someone at the scene so that the actual murderer could be prosecuted and
that Detective Alvarez promised him he would not go to jail but that Detective Alvarez
would help him get into a drug rehabilitation program.

 Detective Alvarez testified at the suppression hearing that he was not in the division
of the police department that handled "controlled buys" and he could not have and did not
use Urbina to handle such transactions. Detective Alvarez denied using Urbina as a
confidential informant, but he recalled one instance where he paid Urbina $60 to contact
him when a suspect in a different case came to Urbina's house. Regarding drug
rehabilitation, Detective Alvarez noted that he instructed Urbina that Urbina could
voluntarily enter a rehabilitation program, but that Detective Alvarez could not get him into
one. Detective Alvarez asserted that he did not make any promises to Urbina in order to
induce him to give the statements, that he did not tell Urbina what to say in the statements,
and that Urbina gave the statements freely and voluntarily. Further, Urbina initialed the
warning paragraph at the beginning of the written statement, which declared, in relevant
part, that he understood his rights and that he "knowingly and voluntarily waive[d] such
rights and freely and voluntarily [made] the . . . statement without compulsion or
persuasion."

 By denying Urbina's motion to suppress, the trial court impliedly chose to believe
Detective Alvarez and to disbelieve Urbina and Baldazo. See Garza, 213 S.W.3d at 346. 
As the trier of fact at the suppression hearing, the trial court was the sole judge of the
credibility of the witnesses and the weight to be given to their testimony. See id. The trial
court found that no one promised Urbina anything in exchange for making the statements
and that he made them voluntarily. We conclude that the trial court's decision to deny the
motion to suppress is within the zone of reasonable disagreement. See State v. Dixon,
206 S.W.3d 587, 590 (Tex. Crim. App. 2006). Urbina's first issue is overruled. 

III. Sufficiency of the Evidence

 By issues two, three, four, and five, Urbina contends that: (1) the evidence is legally
and factually insufficient to support the verdict (issues two and three); (2) the trial court
erred by denying his motion for directed verdict (issue four); and (3) the trial court erred by
instructing the jury on the law of parties because the evidence did not support such an
instruction (issue five). (3)
 

A. Standard of Review and Applicable Law

 When reviewing the legal sufficiency of the evidence, we must determine whether
"'any rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt'--not whether '[we believe] that the evidence at the trial established guilt
beyond a reasonable doubt.'" Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim. App.
2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "[W]e assess all of the
evidence "'in the light most favorable to the prosecution.'" Id. (quoting Jackson, 443 U.S.
at 319.) "After giving proper deference to the factfinder's role, we will uphold the verdict
unless a rational factfinder must have had reasonable doubt as to any essential element." 
Id. at 518 (citing Narvaiz v. State, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992)).

 "Evidence that is legally sufficient, however, can be deemed factually insufficient in
two ways: (1) the evidence supporting the conviction is 'too weak' to support the
factfinder's verdict, or (2) considering conflicting evidence, the factfinder's verdict is 'against
the great weight and preponderance of the evidence.'" Id. (quoting Watson v. State, 204
S.W.3d 404, 414 (Tex. Crim. App. 2006)). In conducting a factual sufficiency review, we
defer to the jury's findings. Id. We consider all of the evidence in a neutral light and will
"find the evidence factually insufficient when necessary to 'prevent manifest injustice.'" Id.
(quoting Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)).

 "A challenge to the denial of a motion for directed verdict is a challenge to the legal
sufficiency of the evidence." Perales v. State, 117 S.W.3d 434, 443 (Tex. App.-Corpus
Christi 2003, pet. ref'd) (citing Williams v. State, 937 S.W.2d 479, 482 (Tex. Crim. App.
1996)). "In general, an instruction on the law of parties may be given to the jury whenever
there is sufficient evidence to support a jury verdict that the defendant is criminally
responsible under the law of parties." Ladd v. State, 3 S.W.3d 547, 564 (Tex. Crim. App.
1999).

 We measure the legal and factual sufficiency of the evidence based on a
hypothetically correct jury charge. Grotti v. State, 273 S.W.3d 273, 280-81 (Tex. Crim.
App. 2008). A hypothetically correct jury charge "accurately promulgates the law, is
authorized by the indictment, does not unnecessarily increase the state's burden of proof
or restrict the state's theories of liability, and adequately describes the particular offense
for which the defendant was tried." Id. In a hypothetically correct jury charge, the elements
of capital murder under section 19.03(a)(2) of the penal code are: (1) the person; (2)
during the course of committing or attempting to commit a robbery; (3) intentionally; (4)
causes the death; (5) of an individual. See Tex. Penal Code Ann. § 19.03(a)(2); see also
id. § 19.02(b)(1) (Vernon 2003) (listing the elements of murder). A person commits
aggravated robbery if he commits robbery and either "causes serious bodily injury to
another" or "uses or exhibits a deadly weapon." Id. § 29.03(a)(1), (2) (Vernon 2003). "A
person commits [robbery] if, in the course of committing theft . . . and with intent to obtain
or maintain control of the property, he . . . intentionally, knowingly, or recklessly causes
bodily injury to another." Id. 29.02(a)(1) (Vernon 2003). "A person is criminally responsible
for an offense committed by the conduct of another if . . . acting with intent to promote or
assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to
aid the other person to commit the offense . . . ." Id. § 7.02(a)(2) (Vernon 2003). When
we review the sufficiency of the evidence supporting a defendant's participation as a party,
"we may consider 'events occurring before, during and after the commission of the offense,
and may rely on actions of the defendant which show an understanding and common
design to do the prohibited act.'" King v. State, 29 S.W.3d 556, 564 (Tex. Crim. App. 2000)
(quoting Ranson v. State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994)). Additionally,
"[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an
actor, and circumstantial evidence alone can be sufficient to establish guilt." Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

B. Discussion

 Urbina argues that because there is no physical evidence linking him to either the
robbery of The Gas Depot or to Aguilar's murder, the evidence is insufficient to support the
jury's verdict and the trial court's instruction on the law of parties and that he was entitled
to a directed verdict. (4) The State contends that Urbina's statement is sufficient evidence
to sustain Urbina's conviction as a party to the offenses committed by Villarreal. We agree
with the State. 

 In his statement, Urbina stated that on the evening of April 22, 2007, Villarreal
arrived at the house where Urbina was "getting high." Villarreal and Urbina "smoked some
crack," and Villarreal wanted "some more" but did not have any money. Urbina did not
have any money either, but he "had access to a pistol that [Villarreal] could use." Villarreal
left, and while Villarreal was gone, Urbina went to Tom Drewry's house and took a gun
without Drewry's knowledge. When Villarreal returned, Urbina gave him the gun, and
Villarreal left to "scope it out." Villarreal returned between 9:00 and 9:15 p.m., and
informed Urbina that the only place he could "hit where they don't know him" was The Gas
Depot. Pursuant to Villarreal's instructions, Urbina rode his bike over to The Gas Depot
to determine whether anyone was there. Urbina returned and informed Villarreal that no
one was at The Gas Depot. Villarreal told Urbina to return to the store and, when Villarreal
drove by, to "give [Villarreal] a signal that the coast was clear and that no one was at the
store." Urbina went back to the store and saw that only Aguilar was there. He signaled to
Villarreal, who robbed the store and killed Aguilar. When Urbina saw Villarreal shoot
Aguilar, he ran to some friends' motel room and took a shower. Later that night, Urbina
returned to Drewry's house and made sure that Drewry stayed high so that he would not
suspect that his gun was missing. Villarreal returned the gun, and Urbina put the gun
underneath Drewry's bed. Urbina went home, got high, and, when the cops arrived, he ran
out the back door.

 Urbina directs us to the testimony of the trial witnesses and asserts that none of
these witnesses presented any physical evidence linking Urbina to the robbery and
murder. (5) While we agree that there was no DNA or fingerprint evidence linking Urbina to
the crimes, physical evidence is not necessary for a conviction in this case. See Clayton,
235 S.W.3d at 778. Urbina's statement demonstrates that he intended to promote or
assist Villarreal in the robbery by procuring the gun and by acting as a scout and a lookout. 
See Tex. Penal Code Ann. § 7.02(a)(2); Cumpian v. State, 812 S.W.2d 88, 90 (Tex.
App.-San Antonio 1991, no pet.) (holding evidence sufficient to sustain burglary conviction
when witness identified defendant as a lookout). Urbina also indicated that Villarreal
murdered Aguilar and that he fled the scene once he saw Villarreal shoot Aguilar. See
Clayton, 235 S.W.3d at 780) ("[A] factfinder may draw an inference of guilt from the
circumstance of flight."). Later, Urbina kept Drewry high while he hid the gun under
Drewry's bed. See Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2007) (stating
that attempts to conceal incriminating evidence are circumstances of guilt). Nina Marie
Lopez testified that on the night of the murder, while she was at Urbina's house, Urbina left
and returned with approximately $100 of cocaine. She noted that Urbina was "jumpy" and
that Urbina told her that the police were after him and that he had been hiding "underneath
where the canal was."

 Reviewing the evidence in the light most favorable to the prosecution, we conclude
that a rational juror could have found beyond a reasonable doubt that Urbina was guilty as
a party to capital murder. See Laster, 275 S.W.3d at 517; see also Tex. Penal Code Ann.
§§ 7.02(a)(2), 19.03(a)(2), 29.02(a)(2). Reviewing the evidence in a neutral light, we
conclude that the evidence is not too weak to support the jury's verdict nor is the verdict
against the great weight and preponderance of the evidence. See Laster, 275 S.W.3d at
518. Additionally, we conclude that the evidence is sufficient to support the jury's verdict
that Urbina is criminally responsible under the law of parties and that the trial court did not
err by including in the jury charge an instruction on the law of parties. See Ladd, 3 S.W.3d
at 564; Mullins v. State, 173 S.W.3d 167 (Tex. App.-Fort Worth 2005, no pet.) (holding that
when the evidence is sufficient to support the defendant's conviction as a party, the trial
court does not err by including a law of parties instruction in the jury charge); see also Tex.
Penal Code Ann. § 7.02(a)(2). Urbina's second, third, fourth, and fifth issues are
overruled. 

IV. Lesser-Included Offenses

 In his sixth and seventh issues, Urbina argues that the trial court erred by denying
his requests to include in the jury charge instructions on the lesser-included offenses of
manslaughter and criminally negligent homicide. See Tex. Penal Code Ann. § 19.04
(Vernon 2003) (Manslaughter); § 19.05 (Vernon 2003) (Criminally Negligent Homicide) 
Urbina contends that because the charge contained the lesser-included offenses of murder
and aggravated robbery, "some evidence of the charged offense of capital [murder] was
absent." See id. § 19.02 (Murder); § 29.03 (Vernon 2003) (Aggravated Robbery). Urbina
"suggests that the missing elements must involve the culpable mental state . . ." and that
because murder and aggravated robbery involve different mental states than capital
murder, the trial court erred by refusing to give instructions on manslaughter and criminally
negligent homicide. The State asserts that the trial court did not err in denying Urbina's
requests because "there was no evidence supporting a conclusion that [Urbina] . . . acted
recklessly or with criminal negligence, as opposed to intentionally." We agree with the
State.

 A trial court includes a charge on a lesser-included offense when (1) "the lesser
included offense [is] included within the proof necessary to establish the offense charged";
and (2) "some evidence [ ] exist[s] in the record that would permit a jury rationally to find
that if appellant is guilty, he is guilty only of the lesser offense." Smith v. State, 187 S.W.3d
186, 195 (Tex. App.-Fort Worth 2006, pet. ref'd) (citing Salinas v. State, 163 S.W.3d 734,
741 (Tex. Crim. App. 2005); Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App.
1993); Royster v. State, 622 S.W2d 442, 446 (Tex. Crim. App. 1981)). The State does not
contest that manslaughter and criminally negligent homicide are lesser-included offenses
of capital murder; therefore, Urbina has satisfied the first prong. See Cardenas v. State,
30 S.W.3d 384, 392 (Tex. Crim. App. 2000) (noting that manslaughter and criminally
negligent homicide are lesser-included offenses of capital murder). We must determine
whether there is some evidence in the record that would permit the jury to find that if Urbina
is guilty, he is guilty only of manslaughter or criminally negligent homicide. Smith, 187
S.W.3d at 195.

 Here, the jury was charged that it could find Urbina guilty of capital murder either as
the primary actor or as a party to Aguilar's murder. See Tex. Penal Code Ann. §§
7.02(a)(2), 19.03(a)(2). Urbina challenges the trial court's denial of his requested
instructions on the grounds that: (1) the evidence shows that he was aware of and
disregarded the substantial risk that Villarreal would commit capital murder, therefore, he
is only guilty of manslaughter; or (2) the evidence shows that he should have been aware
substantial and unjustifiable risk that Villarreal would commit capital murder, therefore, he
is guilty only of criminally negligent homicide. See id. § 19.04 (Manslaughter), § 19.05
(Criminally Negligent Homicide); see also id. § 6.03(c), (d) (Vernon 2003) (defining the
culpable mental states of recklessness and criminal negligence). 

 Urbina's argument fails to recognize that a defendant can be guilty as a party only
when he acts intentionally. See id. § 7.02(a)(2) ("A person is criminally responsible for an
offense committed by the conduct of another if . . . acting with intent to promote or assist
the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the
other person to commit the offense . . . .") (emphasis added); Barnes v. State, 56 S.W.3d
221, 236 (Tex. App.-Fort Worth 2001, pet. ref'd) (citing Lawton v. State, 913 S.W.2d 542,
554 (Tex. Crim. App. 1995)). "When a party is not the 'primary actor,' the State must prove
conduct constituting an offense plus an act by the defendant done with the intent to
promote or assist such conduct." Christensen v. State, 240 S.W.3d 25, 31 (Tex.
App.-Houston [1st Dist.] 2007, pet. ref'd) (op. on reh'g) (citing Beier v. State, 687 S.W.2d
2, 3 (Tex. Crim. App. 1985) and Miller v. State, 83 S.W.3d 308, 313 (Tex. App.-Austin
2002, pet. ref'd)). The jury charge followed section 7.02(a)(2) by requiring that, to find
Urbina guilty as a party, the jury must find beyond a reasonable doubt that Urbina intended
to promote or assist Villarreal. We conclude that the trial court did not err by denying
Urbina's requested lesser-included offense instructions. Urbina's sixth and seventh issues
are overruled.

V. Violation of the Rule

 In his eighth, ninth, tenth, and eleventh issues, Urbina argues that the trial court
erred by failing to strike or disallow certain testimony due to violations of the Rule and by
denying his motion for mistrial based on these same violations. See Tex. R. Evid. 614
(allowing the exclusion of certain witnesses upon a motion from either party or the court's
own motion; commonly referred to as "the Rule"); see also Tex. Code Crim. Proc. Ann. art.
36.03 (Vernon 2007) (providing for the exclusion of certain witnesses "who for the
purposes of the prosecution is a victim, close relative of a deceased victim, or guardian of
a victim . . . ."); Russell v. State, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005) ("The
procedure of excluding witnesses from the courtroom is commonly called putting the
witnesses 'under the rule.' The purpose of placing witnesses under the rule is to prevent
the testimony of one witness from influencing the testimony of another, consciously or
not.").

 We use an abuse of discretion standard to review both a trial court's decision to
allow testimony from a witness who has violated the Rule and a trial court's denial of a
motion for mistrial. See Minor v. State, 91 S.W.3d 824, 829 (Tex. App.-Fort Worth 2002,
pet. ref'd) (citing Guerra v. State, 771 S.W.2d 453, 474-75 (Tex. Crim. App. 1988)); Wead
v. State, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). To determine whether a trial court
abused its discretion in allowing a violation of the Rule, thereby harming the defendant, we
utilize a two-step analysis. Minor, 91 S.W.3d at 829; Potter v. State, 74 S.W.3d 105, 110
(Tex. App.-Waco 2002, no pet.) ("In reviewing the trial court's decision to allow the
testimony, we look at whether the defendant was harmed by the witness's violation; that
is, whether the witness's presence during other testimony resulted in injury to the
defendant.") (citing Bell v. State, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996)). 

 First, we ascertain whether the witness is one who has "been sworn or listed as
witness[ ] in the case and either [heard] testimony or [discussed] another's testimony" or
is a person who was "not intended to be [a witness] and [is] not connected with the case-in-chief but who [has], due to events during trial, become [a] necessary [witness]." Minor, 91
S.W.3d at 829 (citing Guerra, 771 S.W.2d at 476). Second, 

 we must determine: (1) whether the witness actually conferred with or heard
the testimony of another witness without court permission; and (2) whether
"the witness's testimony contradict[ed] the testmony of a witness he actually
heard from the opposing side or corroborate[d] the testimony of another
witness he actually heard from the same side on an issue of fact bearing
upon the issue of guilt or innocence." 


Id. (quoting Loven v. State, 831 S.W.2d 387, 399 (Tex. App.-Amarillo 1992, no pet.)). 
When both criteria are met, the trial court has abused its discretion. Id.

 During the guilt/innocence phase of his trial, Urbina alleged that Rosie Rodriguez,
the owner of The Gas Depot and a State's witness, had been speaking with witnesses
involved in the case. See Tex. Code Crim. Proc. Ann. art. 36.03 (providing for the
exclusion of the victim of the crime); see also id. art. 36.06 (Vernon 2007) (prohibiting
witnesses excluded under art. 36.03 from "convers[ing] with each other or with any other
person about the case" and from "read[ing] any report of or comment upon the testimony
in the case while under rule"). Rodriguez had been placed under the Rule, but after her
testimony in the trial, she was overheard outside of the courtroom asking several other
listed witnesses about the case. The trial court held a hearing on the alleged violation of
the Rule during which Rodriguez testified. She stated that she had spoken with Margaret
Gonzalez, Detective Alvarez, and an unidentified "lady in red" who was not a witness in the
case. Rodriguez claimed to have only asked who was testifying and who had testified and
that no one would answer her questions. She did not ask about "actual testimony"; she did
not tell anyone about her own testimony; and no one answered her questions.

 Under the first prong of the analysis, Rodriguez, Gonzalez and Detective Alvarez
were witnesses who had "been sworn or listed as witnesses in the case and either [heard]
testimony or [discussed] another's testimony . . . ." (6) See Minor, 91 S.W.3d at 829. 
Therefore, we must determine whether they "actually conferred with or heard the testimony
of another witness without court permission." Id. There is no evidence that Rodriguez,
Gonzalez, and Investigator Alvarez heard the testimony of other witnesses, and Rodriguez
specifically stated that she did not discuss her own testimony with Gonzalez or Investigator
Alvarez. Assuming, without deciding, that Rodriguez "conferred with" Gonzalez and
Detective Alvarez, we conclude that neither Gonzalez's nor Detective Alvarez's testimony
corroborated or contradicted the testimony of witnesses they "actually heard." Id. 

 Urbina does not direct us to any corroborating or contradicting testimony pertaining
to this issue in the record. See Tex. R. App. P. 38.1(i). There is no evidence that Gonzalez
and Detective Alvarez "actually heard" the testimony of any other witness, including
Rodriguez. Gonzalez testified that Aguilar was the store clerk at The Gas Depot who
helped her with some purchases shortly before he was killed. Her testimony did not
corroborate or contradict the testimony of any other witness. Detective Alvarez, in pertinent
part, testified that he did not pay any of Urbina's bills. This testimony did contradict Elvira
Peza, Urbina's sister, who testified that Urbina told her that Investigator Alvarez had
promised to help Urbina pay his bills. There is no evidence that Investigator Alvarez
"actually heard" Peza's testimony or that Rodriguez "conferred with" him regarding Peza's
testimony. See Minor, 91 S.W.3d at 829. Therefore, we conclude that the trial court did
not abuse its discretion by not striking Rodriguez's testimony, by allowing Investigator
Alvarez and Gonzalez to testify, and by denying Urbina's motion for mistrial. Urbina's
eighth, ninth, tenth, and eleventh issues are overruled.

VI. Conclusion

 Having overruled all of Urbina's issues, we affirm the judgment of the trial court.



 __________________________

 GINA M. BENAVIDES,

 Justice


Do not publish.

Tex. R. App. P. 47.2(b).


Delivered and filed the

19th day of August, 2010.
1. As this is a memorandum opinion and the parties are familiar with the facts of the case, we will not
recite them here except as necessary to advise the parties of this Court's decision and the basic reasons for
it. See Tex. R. App. P. 47.4.
2. Urbina's statements do not indicate whether "Gil" is Gilberto Villarreal, the person listed in the jury
charge as either the primary actor or a party to Aguilar's murder. However, neither party to this appeal asserts
that the "Gil" referred to in the statement is anyone other than Gilberto Villarreal.
3. In their briefs to this Court, both parties combined these issues for discussion purposes. Because
the standard of review for Urbina's legal sufficiency, directed verdict, and charge error issues is the same, we
will also combine these issues for purposes of discussion. See Perales v. State, 117 S.W.3d 434, 443 (Tex.
App.-Corpus Christi 2003, pet. ref'd) ("A challenge to the denial of a motion for directed verdict is a challenge
to the legal sufficiency of the evidence.") (citing Williams v. State, 937 S.W.2d 479, 482 (Tex. Crim. App.
1996)); Mullins v. State, 173 S.W.3d 167, 178 (Tex. App.-Fort Worth 2005, no pet.) (holding that because the
evidence was legally and factually sufficient to support the appellant's conviction as a party, the trial court did
not err by instructing the jury on the law of parties) (citing Ladd v. State, 3 S.W.3d 547, 564 (Tex. Crim. App.
1999)).


4. The State argues that Urbina failed to adequately brief his argument concerning the jury instruction
on the law of parties because he failed to cite any authorities to support his contention. See Tex. R. App. P.
38.2. However, Urbina recited the applicable standard of review for this issue and incorporated his legal
sufficiency argument. Following these recitations, Urbina presented his arguments on this issue. The State
followed the same pattern in its brief. We conclude that Urbina properly briefed this issue.
5. Specifically, Urbina directs us to the testimony of the following witnesses: Anastacia Aguilar,
Aguilar's mother; Elijio Vela, a granite shop owner; James Ramirez, a patrol officer with the Edinburg Police
Department; Jose Francisco Garza, an investigator with the Edinburg Police Department; David Valdez, an
investigator with the Edinburg Police Department; Norma Jean Farley, the chief forensic pathologist for
Hidalgo County; Caleigh Rose Garcia, a college student who went into The Gas Depot following the murder
but who did not see Aguilar's body; Richard Drewry, a fire marshal with the City of Edinburg who gave his
brother, Tom Drewry, the gun used in Aguilar's murder; Rosie Rodriguez, the owner of The Gas Depot; Nina
Marie Lopez, a person who used cocaine at the "crack house" with Urbina; Margaret Gonzalez, a customer
of The Gas Depot who made a purchase from Aguilar shortly before he was murdered; and Detective Alvarez.
6. The "lady in red" was never identified as a witness and did not testify at trial. Thus, the first prong
of the analysis is not satisfied, and the trial court did not abuse its discretion on this ground. See Minor, 91
S.W.3d at 829.