# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-17-00804-CR
NO. 03-17-00805-CR
NO. 03-17-00806-CR
NO. 03-17-00807-CR

**Christopher Lynn Newberry, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
NOS. D-1-DC-16-301801, D-1-DC-16-301800, D-1-DC-16-301799 & D-1-DC-16-205616
HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Christopher Lynn Newberry pleaded guilty to one count of sexual assault, *see* Tex. Penal Code § 22.011(a), one count of burglary of a habitation with the intent to commit sexual assault, *see id.* § 30.02(d), one count of aggravated assault, *see id.* § 22.02(a)(2), and one count of burglary of a habitation, *see id.* § 30.02(d). He also pleaded true to three enhancement allegations of prior felony convictions. After holding a sentencing hearing, the trial court sentenced Newberry to 36 years' imprisonment for each count, with the sentences to run concurrently. In his sole point of error, Newberry contends that the trial court abused its discretion in allowing the victim's mother to testify after she was present in the courtroom while the victim testified. We will affirm the trial court's two judgments of conviction for burglary of a habitation. We will modify the

judgments of conviction for aggravated assault and sexual assault to correct non-reversible clerical errors and affirm those judgments as modified.

## BACKGROUND

Near the beginning of the sentencing hearing, the Rule was invoked, *see* Tex. R. Evid. 614, and the trial court instructed the witnesses to be present in the courtroom only when offering their testimony. Among other witnesses, the State called Katherine Reed, the victim of the charged offenses.[1] Reed testified that she was lying on her bed one morning when she saw a man standing in her room. The man was "about 6 foot, maybe 185" and "looked dirty, smelled." According to Reed, the man, later identified as Newberry, struck her with what "looked like a long piece of metal." Newberry then grabbed her throat and held her down, telling her that "if [she] said anything or made any noise, he was going to kill [her]." Newberry also told her that she was his girlfriend now. He called Reed "a dumb bitch" and started hitting her on her face and head with his fist. Newberry then told Reed "that [she] was going to suck his dick or he was going to kill [her]." Newberry also tried to remove Reed's underwear, saying that "he was going to fuck the shit out of [her] and then kill [her]." He tried to force his penis into her mouth, and, although she tried to keep her mouth shut, "every now and then [she] would start crying and so it would like get inside [her] lip area." Reed kept looking over at the nightstand, where she kept a firearm, but Newberry told her, "You stupid, bitch, I know where you keep your guns. I know everything about you." Eventually, Reed was able to strike Newberry with her knee and escape. Reed further testified concerning the negative impact of the incident on her life.

---

[1] Katherine Reed was the pseudonym the victim used during the hearing.

The State also called James Cazin. Cazin testified that, on the same morning, he suddenly saw a man standing in the house he was visiting. According to Cazin, the man, later identified as Newberry, was holding "a pipe or a rebar or something." Cazin "thought maybe he was working outside or something," so Cazin asked Newberry if he needed help. Newberry then said, "You know I'm in your house and if you want you could kill me, right?" After Newberry "made a motion like he was going to swing it at [Cazin]," Cazin fled to a room where a woman was sleeping, locked the door, and called the police. After the police arrived and arrested Newberry, the police brought Cazin over to the patrol vehicle to identify Newberry as the intruder. Cazin testified, "[A]s I was identifying him and looking at him, he proceeded to blow me a kiss and said, I would have raped you, too, if I had the chance."

When the State prepared to call Reed's mother, Nancy Reed,[2] the attorneys noted that she had been in the courtroom during her daughter's testimony. Newberry's attorney objected to her testimony because she was present in violation of the Rule. The court overruled the objection and allowed her to testify. Reed's mother testified concerning the negative impact the assault had on her daughter and their family.

Newberry also testified at the hearing. According to Newberry, his father sexually abused him as a child, he was addicted to methamphetamine and was under the influence of methamphetamine at the time of the offenses, and he had been in and out of prison for years. Newberry further testified that he had been hearing voices since childhood that told him to kill

---

[2] Reed's mother used this pseudonym during the hearing.

himself. Newberry stated that he expected to receive a life sentence for the offenses. He also read a statement apologizing to Reed for the assault.

At the conclusion of the hearing, the court pronounced sentence, and this appeal followed.

## APPLICABLE LAW AND STANDARD OF REVIEW

Texas Rule of Evidence 614, commonly referred to as "the Rule," codifies the witness-sequestration rule. When invoked by either party or the trial court, the Rule mandates the exclusion of witnesses from the courtroom during trial so they cannot hear the testimony of other witnesses. *See* Tex. R. Evid. 614; *Sponsler v. State*, No. 03-11-00654-CR, 2013 WL 6002763, at \*10 (Tex. App.—Austin Nov. 8, 2013, pet. ref'd) (mem. op., not designated for publication). "The Rule is designed to prevent witnesses from altering their testimony, consciously or not, based on other witnesses' testimony." *Routier v. State*, 112 S.W.3d 554, 590 (Tex. Crim. App. 2003); *see Walker v. State*, 461 S.W.3d 599, 608 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("In a criminal case, the Rule's purpose is to prevent one witness's testimony from being 'materially affected if the witness hears other testimony at the trial.'") (quoting Tex. Code Crim. Proc. art. 36.03(a)); *Harris v. State*, 122 S.W.3d 871, 882 (Tex. App.—Fort Worth 2003, pet. ref'd) ("The purpose of the Rule is to prevent corroboration, contradiction, and the influencing of witnesses."). When the Rule is invoked, a witness should not hear testimony in the case or talk to any other person about the case without the court's permission. *See Harris*, 122 S.W.3d at 882; *see also* Tex. Code Crim. Proc. arts. 36.05 ("in no case where the witnesses are under rule shall they be allowed to hear any testimony in the case"); 36.06 ("Witnesses, when placed under rule, shall be instructed by the court

4

that they are not to converse with each other or with any other person about the case, except by permission of the court, and that they are not to read any report of or comment upon the testimony in the case while under rule.").

Although a trial court must exclude witnesses covered by the Rule, "the court's decision to allow testimony from a witness who has violated the rule is a discretionary matter." *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996) (per curiam). We review such a decision for an abuse of discretion. *Id.*; *accord Gipson v. State*, No. 03-12-00808-CR, 2015 WL 661277, at *3 (Tex. App.—Austin Feb. 12, 2015, pet. ref'd) (mem. op., not designated for publication). To determine whether the trial court abused its discretion, we perform a two-step analysis. *Guerra v. State*, 771 S.W.2d 453, 476 (Tex. Crim. App. 1988); *Minor v. State*, 91 S.W.3d 824, 829 (Tex. App.—Fort Worth 2002, pet. ref'd); *see also Mescher v. State*, No. 03-10-00517-CR, 2012 WL 2981104, at *2 (Tex. App.—Austin July 12, 2012, pet. ref'd) (mem. op., not designated for publication) (citing *Minor*). In the first step, we consider whether the witness who violated the Rule (1) was sworn in or listed as a witness in the case, or (2) was a person not intended to be a witness and was not connected with the State's or defendant's case-in-chief but who, because of events during trial, became a necessary witness. *See Mescher*, 2012 WL 2981104, at *2; *Minor*, 91 S.W.3d at 829. If the witness lacked personal knowledge of the offense and was not likely to be called as a witness, then the trial court did not abuse its discretion in allowing the witness to testify. *Guerra*, 771 S.W.2d at 476; *Minor*, 91 S.W.3d at 829. Otherwise, we must proceed to the second step.

In the second step of the analysis, "we look at whether or not the defendant was harmed or prejudiced by the witness's violation." *Bell*, 938 S.W.2d at 50; *accord Minor*, 91 S.W.3d at 829. Two criteria guide our analysis of harm: "(a) whether the witness actually conferred with or

heard testimony of other witnesses, and (b) whether the witness's testimony contradicted testimony of a witness from the opposing side or corroborated testimony of a witness he had conferred with or heard." *Bell*, 938 S.W.2d at 50; *accord Gipson*, 2015 WL 661277, at *4; *see Gonzales v. State*, No. 03-13-00333-CR, 2015 WL 3691180, at *3 (Tex. App.—Austin June 11, 2015, no pet.) (mem. op., not designated for publication) ("The appellant has the burden to demonstrate that the record supports a finding under both prongs.").

"If both of the above criteria are met, then the trial court abused its discretion by allowing the testimony over objection." *Mescher*, 2012 WL 2981104, at *2. However, even if we determine that the trial court abused its discretion by allowing the testimony, we may reverse the trial court's judgment only if the error affected the defendant's substantial rights. *See Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005) ("Because the appellant complains about the violation of an evidentiary rule, the error is non-constitutional and will be disregarded unless it affected the appellant's substantial rights.") (citing Tex. R. App. P. 44.2(b)); *Mescher*, 2012 WL 2981104, at *2; *see also Lewis v. State*, 402 S.W.3d 852, 858 (Tex. App.—Amarillo 2013), *aff'd*, 428 S.W.3d 860 (Tex. Crim. App. 2014) ("A violation of the rule is not in itself reversible error, but only becomes so where the objected-to testimony is admitted and the complaining party is harmed."). The error affects substantial rights when it "has a substantial and injurious effect or influence in determining the [fact-finder's] verdict." *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005) (quoting *Russell*, 155 S.W.3d at 183). "Substantial rights are not affected by the erroneous admission of evidence if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the [fact-finder], or had but a slight effect." *Mescher*, 2012 WL 2981104, at *2.

6

## DISCUSSION

Applying the framework described above, we must first determine whether Reed's mother was a witness "who had personal knowledge of the offense and who the party clearly anticipated calling to the stand."[3] *See Finch v. State*, No. 06-14-00182-CR, 2015 WL 2376344, at *4 (Tex. App.—Texarkana May 19, 2015, no pet.) (mem. op., not designated for publication) (quoting *Guerra*, 771 S.W.2d at 476). The record before us indicates that Reed's mother had no personal knowledge of the charged offenses and that she testified only at the punishment hearing. The Texarkana Court of Appeals has held that a trial court does not abuse its discretion in allowing a witness to testify "in the punishment phase who has no personal knowledge of the charged offense." *See id.* at *5 (collecting cases in which courts of appeals have concluded that the trial court did not abuse its discretion in allowing witnesses to testify in violation of the Rule when the witness testified only during the punishment phase); *see also Thomison v. State*, No. 11-10-00368-CR, 2012 WL 5989193, at *2 (Tex. App.—Eastland Nov. 29, 2012, no pet.) (mem. op., not designated for publication) ("We must consider the kind of witness, the nature of the testimony, and how it relates to the case-in-chief. For example, admitting testimony related to something other than guilt is unlikely to violate the rule because, usually, that type of testimony neither corroborates nor contradicts another witness's testimony.") (cleaned up).

---

[3] The record before us does not indicate that Nancy Reed was present when the Rule was invoked and the trial court instructed the witnesses. The State argues that Reed's mother did not violate the Rule because she was not present to receive the court's instructions. We will assume, without deciding, that Nancy Reed was subject to the Rule despite not being present when it was invoked. *But see Rivera v. State*, 808 S.W.2d 80, 96 (Tex. Crim. App. 1991) ("[I]n this case, there was no violation of the rule because the evidence showed that the Deuchers had not yet come forward on the first day of trial; they were not known to be witnesses, and were not covered by the invocation of the rule on the first day.").

Even in the absence of a per se rule that a court can never abuse its discretion in permitting the testimony of a witness in violation of the Rule when the witness testifies only at the punishment phase, we agree with our sister courts that, at the very least, "the admission of testimony related to something other than guilt or innocence is unlikely to result in the violation of [the Rule]." *See Upton v. State*, 894 S.W.2d 426, 428 (Tex. App.—Amarillo 1995, pet. ref'd). Here, Nancy Reed's testimony was offered only during the punishment phase (indeed, there was no guilt-innocence phase, because Newberry pleaded guilty), she testified concerning her personal knowledge of the effect on her family of Newberry's assault, her testimony did not concern the offenses, nor did she claim personal knowledge of the offenses, and her testimony did not corroborate any other witness's testimony on a point of disputed fact. Moreover, Newberry has not shown any prejudice from Nancy Reed's testimony. At the hearing, Newberry stated that he expected a life sentence, and the State asked for a sentence of 50 years during closing argument. The trial court sentenced Newberry to 36 years, which is less than the sentence Newberry expected and less than that requested by the State. Given the grave nature of the offenses to which Newberry pleaded guilty and Katherine Reed's testimony concerning her struggles since the assault, it does not appear reasonably likely on this record that the trial court's sentence was elevated by Nancy Reed's testimony.[4]

For all of these reasons, we cannot conclude that the trial court abused its discretion in allowing Nancy Reed to testify. And, even if the court did abuse its discretion, we could not

---

[4] We note that, in his appellate brief, Newberry does not explain how the trial court's decision to allow Nancy Reed to testify in violation of the Rule affected his substantial rights and was therefore reversible error.

conclude that the error affected Newberry's substantial rights. Accordingly, we overrule Newberry's sole point of error.[5]

Finally, we note that the State has filed a motion calling our attention to non-reversible clerical errors in two of the judgments. Specifically, the State points out that the judgment for trial court cause number D-1-DC-16-301799 (appellate cause number 03-17-00806-CR) incorrectly indicates that Newberry was found guilty of aggravated assault causing serious bodily injury, a first-degree felony. *See* Tex. Penal Code § 22.02(a)(1). The judgment should indicate that the offense was aggravated assault with a deadly weapon, a second-degree felony. *See id.* § 22.02(a)(2), (b). In addition, the State points out that the judgment for trial court cause number D-1-DC-16-301801 (appellate cause number 03-17-00804-CR) incorrectly indicates that Newberry was found guilty of sexual assault, a first-degree felony. The judgment should indicate that the offense was a second-degree felony. *See id.* § 22.011(a)(1)(B), (f). We agree with the State that these clerical errors should be corrected. This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we will modify the judgments to correct these errors.[6]

---

[5] In their appellate briefing, the parties argue whether a special exception exists allowing close family members of the victim to remain in the courtroom after the invocation of the Rule. Given our disposition of the appeal, we need not address that question.

[6] We dismiss the State's Motion for Judgments Nunc Pro Tunc as moot.

9

## CONCLUSION

We affirm the trial court's judgments of conviction in trial court cause numbers D-1-DC-16-301800 (appellate cause number 03-17-00805-CR) and D-1-DC-16-205616 (appellate cause number 03-17-00807-CR). We modify the judgment of conviction in trial court cause number D-1-DC-16-301799 (appellate cause number 03-17-00806-CR) to indicate that Newberry was found guilty of aggravated assault with a deadly weapon, a second-degree felony, pursuant to Texas Penal Code section 22.02(a)(2), and we affirm the judgment as modified. We modify the judgment in trial court cause number D-1-DC-16-301801 (appellate cause number 03-17-00804-CR) to indicate that Newberry was found guilty of sexual assault, a second-degree felony, and we affirm the judgment as modified.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Field and Toth

03-17-00804-CR: Modified and, as Modified, Affirmed
03-17-00805-CR: Affirmed
03-17-00806-CR: Modified and, as Modified, Affirmed
03-17-00807-CR: Affirmed

Filed: November 15, 2018

Do Not Publish