# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00517-CR

**Lynda Jeanne Mescher, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
NO. 36448, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant Lynda Jeanne Mescher challenges the punishment proceeding that followed her guilty plea arising out of an accident in which Mescher drove a pickup truck that rolled over, ejecting six children who were riding in the truck bed. One child was killed and five were injured—one seriously. Mescher pleaded guilty to all six counts brought against her and pleaded true to the allegation that she used the truck as a deadly weapon with respect to each offense. The jury assessed punishment of prison terms of eight years for manslaughter, four years for a second-degree felony count of serious bodily injury to a child, and two years for each of four state-jail felony counts of injury to a child. These sentences will run concurrently. Appellant contends on appeal that the trial court erred during the punishment phase (1) by allowing testimony from a witness who had heard other witnesses testify and (2) by allowing testimony from a rebuttal witness who was not timely disclosed to the defense and whose testimony was irrelevant and had a prejudicial effect that substantially outweighed its probative value. We will affirm the judgment.

## BACKGROUND

Because of the nature of the issues raised on appeal, we need not recount in detail the tragic facts of the accident underlying this case. We have reviewed the record and will summarize the evidence adduced at the punishment hearing to the extent necessary to provide useful context for the legal issues raised in this appeal.

Mescher owned and operated a small stable where children took horseback riding lessons. Six children—five girls around the age of 11 and one boy, age 8—were participating in an overnight event at the stable. After dinner one night, Mescher drove the group to Marble Falls in her pickup truck. The truck had bucket seats in the front and a bench seat in the back with three seat belts. Some of the children sat two to a seat belt. During the return to the stables sometime after midnight, Mescher stopped the truck and asked if the children wanted to get into the bed of the truck—to stargaze, according to her testimony. At this point, Mescher's testimony diverged from that of the children and parents who testified at trial. Mescher testified that she asked whether the children wanted to "go to the park where the teenagers are always doing doughnuts."[1] Other witnesses recalled that she asked if the children wanted to go "do doughnuts." It is undisputed that, while driving in a park, Mescher rolled her truck over and ejected the children from the truck bed. One child was killed, a second child suffered a punctured lung, and the remaining children suffered less serious physical injuries.

---

[1] The Wikipedia entry for "Doughnut (driving)" describes this maneuver as "rotating the rear or front of the vehicle around the opposite set of wheels in a continuous motion, creating (ideally) a circular skid-mark pattern of rubber on a roadway." Wikipedia, http://en.wikipedia.org/wiki/Doughnut_(driving) (June **, 2012).

The testimony at the punishment phase centered on the effect of the accident on the children and their families and whether Mescher was remorseful, generally reckless, and a suitable role model for children. In addition to emergency personnel who responded to the accident scene, testifying witnesses included some of the children who took riding lessons from Mescher and some parents whose children took lessons. Mescher and her family and friends also testified. Testimony from the State-sponsored witnesses discussed other instances in which Mescher had the children ride in the bed of the truck, her pattern of exposing the children to danger in riding horses along, on, and across paved roads, whether Mescher consistently supervised the children properly, and whether Mescher showed adequate remorse following this accident. One father testified that he was concerned about the supervision the children received, objected at a picnic when he saw his daughter and other children climb into the bed of the truck for transport, and decided to withdraw his daughter from lessons when Mescher did not see a problem with the children riding in the bed of the truck. Mescher did not recall speaking with the father about this issue. The defense called witnesses who testified regarding Mescher's lengthy history of volunteering with Girl Scout troops, her work at schools, the larger life lessons she taught at the stables, and Mescher's remorse for the wreck.

**DISCUSSION**

In three issues, Mescher complains of the admission of testimony from the State's two rebuttal witnesses.[2] She complains that the court improperly allowed testimony from

---

[2] Mescher also complained that she was not properly admonished before her guilty plea, but a supplemental clerk's record prepared after her brief was filed contains her guilty plea and reveals that she was admonished. The State argued in its brief that the supplemental record refuted Mescher's admonishment complaint, and Mescher did not respond. We conclude that the admonishment was sufficient.

Burnet County victim services coordinator Kathy Dixon and Mescher's neighbor Lynell Faber. Dixon testified about contact she had with one of Mescher's witnesses regarding whether he intended to testify. Faber testified to rebut Mescher's character witnesses.

**Dixon's testimony**

Mescher asserts that the trial court erred by permitting Dixon's testimony because she had heard testimony of other witnesses in court despite invocation of "the rule." *See* Tex. R. Evid. 614. Rule 614 is a procedural device intended to prevent the testimony of witnesses from being improperly influenced by the testimony of others that is implemented by excluding witnesses from the courtroom during the testimony of others. *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996). The trial court has the discretion to admit testimony from a witness who, in violation of an exclusion order under Rule 614, heard other witnesses testify. *Id.*

*Standard of review*

We perform a two-step analysis in determining whether a trial court has abused its discretion in allowing a violation of the Rule. *Minor v. State*, 91 S.W.3d 824, 829 (Tex. App.—Fort Worth 2002, pet. ref'd). First, we ascertain which of two kinds of witness was involved: (1) a witness who was sworn in or listed as a witness in the case and either heard testimony or discussed another's testimony; and (2) a person who was not intended to be a witness and was not connected with the case-in-chief but who, due to events during trial, became a necessary witness. *Id*. (citing *Green v. State*, 682 S.W.2d 271, 271 (Tex. Crim. App. 1984)). If the witness originally had no connection with either side's case and, because of a lack of personal knowledge regarding the offense, was not likely to be called as a witness, then no abuse of discretion can

4

be shown in the person being allowed to testify. *Id.* Under the second step of the analysis, we must determine: (a) whether the challenged witness conferred with or heard other witnesses and (b) whether the challenged witness's testimony contradicted that of an opposing side's witness or corroborated that of a witness he had conferred with or heard. *Id.* If both of the above criteria are met, then the trial court abused its discretion by allowing the testimony over objection. *Id.*

If we find an abuse of discretion, we must also examine whether the admission of the testimony affected the defendant's substantial rights. *Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005) (citing Tex. R. App. P. 44.2(b)).[3] Substantial rights are not affected by the

---

[3] This case was tried in the context of a standard for reversal that differs significantly from that applicable to the cases on which Mescher relies. *See Bell*, 938 S.W.2d at 50; *Coots v. State*, 826 S.W.2d 955, 960-61 (Tex. App.—Houston [1st Dist.] 1992, no pet.). Both cases on which Mescher relies were decided under the pre-1997 standard of review for non-constitutional error, under which courts of appeal finding error had to reverse unless they concluded beyond a reasonable doubt that the error did not contribute to the verdict or punishment. *See* former Tex. R. App. P. 81(b)(2). Under the current standard, we can reverse only if the non-constitutional error affected substantial rights. Tex. R. App. P. 44.2(b)(2).

The nature of the testimony in this case also differs significantly from that at issue in *Coots*. *See* 826 S.W.2d at 960-61. In that case, the court of appeals reversed because the trial court's bailiff—who was not designated as a witness before trial—testified about the ease with which an electronic monitoring bracelet could be removed with pliers. *Id*. at 960. His testimony undermined the defendant's alibi that he could not have committed the crime because his monitoring bracelet did not show he left his house. *Id.* As in this case, the State contended that it could not have known that it would use the bailiff's testimony before it heard the defense witnesses. *Id.* The court of appeals held that the State should have known the defendant's strategy from his opening statement and should have notified the trial court that it would probably call the bailiff to testify. *Id*. at 960-61. The court held that the admission of the bailiff's testimony was error and that the error was "obviously harmful because the bailiff heard and contradicted vital testimony of two critical defense witnesses concerning the monitor." *Id*. (citing former Tex. R. App. P. 81(b)(2)). As set out above, the current substantial-rights standard is more challenging for appellants to meet. Further, the facts on which the bailiff in *Coots* testified were apparent from the opening statement and critical to whether the defendant could have committed the crime. *Coots*, 826 S.W.2d at 960-61. Here, the disputed fact was a tangential issue possibly affecting the credibility of a witness at punishment that apparently came to light outside the courtroom after the trial had begun. As such, his case is not governed by the harm analyses described in *Bell* and *Coots*.

erroneous admission of evidence if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). Even if the challenged witness contradicts testimony he has heard, the erroneous admission of the challenged witness's testimony is harmful only if the record indicates that his testimony was influenced by hearing the testimony of the previous witness. *Russell*, 155 S.W.3d at 181, 183.

### *The disputed testimony*

Mescher complains that the State should have anticipated calling Dixon because it used the substance of her testimony to cross-examine one of Mescher's witnesses and that Dixon was influenced by other testimony she heard. While cross-examining Mescher, the State asked whether a minister from Spicewood Baptist Church had declined to testify on her behalf. When Mescher testified that Pastor Bill McCormick had agreed to testify on her behalf, the State probed further, asking "If he said you had only come right after the wreck and that he had no personal connection with you, he would be telling a lie?" Mescher responded that she started attending his church after the wreck and had attended almost every Sunday. On redirect examination, Mescher said she would be surprised if Pastor McCormick said he would not testify and said that he had attended most of the by-then three days of trial. On recross examination, the State asked Mescher whether McCormick declined to testify because he did not have a relationship with Mescher. Mescher replied that she did not know what he might have said to the prosecutor's coworker, but that she had called him as a witness. Mescher then called McCormick as the next and final witness of her case-in-chief.

6

Pastor McCormick testified that Mescher has regularly attended Sunday morning church services since the accident. On direct examination by Mescher's attorney, the following exchange occurred:

Q. If the opposing counsel were to make a statement that you told someone in her office that you asked—that you were asked to testify, and you refused because you did not have a personal relationship with her, is that accurate?

A. No, sir.

[Prosecutor]: Your Honor, I believe the word was "declined."

During cross-examination, McCormick acknowledged that he conversed with Dixon as follows in relevant part:

A. I went to the victim's services office on a totally unrelated matter, and Kathy [Dixon] recognized me and said, "Should you be here? You're a witness." I said, "No, I was released from being a witness."

Q. Did you say anything about whether or not you knew her very well, knew the defendant, I'm sorry?

A. I think I've already said that.

Q. That you didn't?

A. I've known her casually through the community. I've got to know her well recently.

Q. What I'm asking is what you told Kathy, Kathy Dixon. Do you remember? You may not?

. . . .

7

A.  I don't remember but I did not—I'd already told her that I was released from being a witness, just had casual conversation, but I didn't say anything that would imply that I had declined from testifying.

Mescher rested her case at the end of McCormick's testimony.

Mescher objected when the State opened its rebuttal case by calling Dixon.  At a bench conference, the prosecutor explained, "Your Honor, when this matter came up, I told [Dixon] not to be present when Pastor McCormick testified, and she has left the courtroom.  It's obvious why she was here before and has nothing to do with what we're talking about."  When the prosecutor confirmed that Dixon's testimony would be limited to the nature of her conversation with Pastor McCormick, the court overruled the objection.  Dixon then testified that McCormick had told her that he was not going to testify because his contact with Mescher was limited to grief counseling regarding a pet's death and just over a year's worth of church attendance.  Dixon testified that Pastor McCormick said of Mescher, "I just don't feel like I had a connection."

### *Error analysis*

Dixon undisputedly heard testimony despite the invocation of the rule excluding witnesses.  She does not fit neatly into one of the *Minor* categories, however, because the record indicates that the topic of Pastor McCormick's alleged reluctance to testify did not arise until trial began, but Dixon remained in the courtroom after the prosecutor decided to inject that topic into evidence. The State admitted that Dixon was in the courtroom during the trial and, although its assertion that she left before McCormick's testimony is uncontroverted, there is no indication that she left before Mescher's testimony about his willingness to testify. The State asserts in its brief as follows:

8

> It was not until the cross-examination of Appellant that the prosecutor became aware of a possible conflict as to whether Pastor McCormick did or did not decline to testify. *At this point* the prosecutor requested Ms. Dixon to remain outside of the courtroom *during Pastor McCormick's testimony.* So in this instance, Ms. Dixon was not present during the testimony of *Pastor McCormick.*

(Emphases added.) The clear implication from the record and the State's brief is that, despite Dixon's presence in the courtroom, the State opted to question Mescher about McCormick's willingness to testify. Dixon's later testimony plainly contradicts Mescher's testimony in addition to McCormick's testimony. Under the test described in *Bell* and *Minor*, the trial court abused its discretion by admitting Dixon's testimony. *See Bell*, 938 S.W.2d at 50; *Minor*, 91 S.W.3d at 829.

### Harm analysis

That said, we find no reversible error in the admission of Dixon's testimony, which related only to whether Pastor McCormick had previously stated that he had declined to testify. Dixon apparently heard Mescher's testimony, but Mescher professed ignorance of what McCormick might have said to Dixon outside her presence. Dixon apparently did not hear McCormick's testimony. She testified that McCormick said he had declined to testify even after McCormick actually testified—including denying saying he declined to testify. This record persuades us that Dixon's testimony was not influenced by testimony that she heard. Further, there is no indication that her testimony affected the jury's punishment determination. McCormick was but one of several witnesses called by Mescher, and his testimony was essentially limited to the facts that he had performed a memorial ceremony for her pet several years earlier, that she had attended his church since the wreck, and that she sang at a Sunday service. Any effect of Dixon's testimony that McCormick said he had declined to testify was significantly diminished by the fact that McCormick

9

did in fact testify. On the record presented, we have fair assurance that the erroneous admission of Dixon's testimony did not influence the jury, or had but a slight effect, and thus that the admission of her testimony did not create any reversible error.

**Faber's testimony**

Mescher also complains about the admission of rebuttal testimony from Lynell Faber, her neighbor, on the grounds that the State had not disclosed her as a witness. Mescher contends that the trial court abused its discretion by allowing the State to call a rebuttal witness it had known of, but not previously disclosed. Upon motion by the defense, the State should disclose the witnesses it intends to use at any stage in the trial. *Stoker v. State*, 788 S.W.2d 1, 15 (Tex. Crim. App. 1989). If a witness who is not disclosed to the defendant testifies over objection, we must decide whether the trial court abused its discretion in allowing the witness to testify. *Id.* Among the relevant factors is whether the prosecutor showed bad faith in failing to disclose the name in advance and whether the defendant reasonably could have anticipated that the witness would testify. *Id.* We must disregard any abuse of discretion involving non-constitutional error unless it is shown to affect substantial rights. Tex. R. App. P. 44.2(b); *Rainey v. State*, 949 S.W.2d 537, 544 (Tex. App.—Austin 1997, pet. ref'd).

### *The testimony*

Mescher did not object immediately when Faber was called, but did so after some testimony establishing the proximity of Faber's home to Mescher's property. The trial court overruled Mescher's objection initially, stating that rebuttal witnesses did not have to be disclosed. Faber then testified, over a relevance objection discussed below, that Mescher's mode of dress often

10

offended Faber's sensibilities.[4] At a bench conference, the court deemed Faber's testimony about Mescher's driving habits to be fair rebuttal. Faber testified that she and her husband often walked along a county road near Mescher's property. She testified that they felt threatened by Mescher's tendency to drive rapidly while weaving across the road. Shortly thereafter, outside the presence of the jury, the trial court commented that it had found the local rules that required the State to disclose "information for any rebuttal witnesses for which the State can reasonably anticipate." The prosecutor protested that she did not meet Faber until the trial started,[5] could not have given notice, had "never heard of giving rebuttal notice like during the trial," and that the local rules had not been approved by the Supreme Court or filed with the Secretary of State. The court responded that the requirement was embodied in a standing order implemented in each case and that "Sunday is an adequately reasonable anticipation."

### Error and harm analysis for allowing an undesignated witness

We conclude that the court erred by admitting Faber's testimony, but that Mescher has not demonstrated harm from that error. After overruling Mescher's objection to the undisclosed witness and permitting some testimony, the court essentially conceded that the State violated a standing order by failing to disclose the witness. The court, however, gave Mescher the opportunity

---

[4] Faber testified regarding a day when she saw Mescher at the Home Depot wearing "a cowboy hat, a bikini top, short shorts and cowboy boots, and I thought, oh, my God, I hope she doesn't come up to me and let people know that I know her." She also testified that Mescher wore similar attire when riding. Faber stated, "This [trial] is the first time I've ever seen her fully dressed."

[5] The prosecutor elsewhere asserted that she had met Faber on Sunday, the day before the trial began on Monday. Faber asserted that she contacted the district attorney's office on Saturday of the weekend before the trial began. Voir dire and the guilty plea occurred on Monday, trial began on Tuesday, and Faber was called on Wednesday.

to question Faber outside the presence of the jury to explore her possible testimony, before recalling the jury and resuming the trial. In addition to cross-examining Faber, Mescher was permitted to call a surrebuttal witness regarding Mescher's mode of dress and reputation. Mescher has not shown any uncured harm from any error in permitting Faber's testimony. The substance of Faber's testimony that Mescher sped on other occasions added little to Mescher's concession that she was driving too fast at the time of the wreck. The "substance" of Faber's commentary on Mescher's mode of dress was wholly irrelevant to the serious issues involved in this case and, furthermore, was adequately rebutted by Mescher's surrebuttal witness's testimony that she had never seen or heard of Mescher dressing inappropriately. The trial court's admission of the undesignated Faber's testimony did not affect Mescher's substantial rights and, therefore, we must disregard any error. *See* Tex. R. App. P. 44.2(b).

### *Error and harm analysis for admission of irrelevant testimony*

Mescher further contends that the trial court erred by admitting Faber's testimony that was wholly irrelevant to the punishment issues and that generated unfair prejudice that substantially outweighed its probative value. The court may admit evidence at punishment that is relevant to general reputation, character, and the circumstances of the offense. *See* Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a) (West Supp. 2011); *Ellison v. State*, 201 S.W.3d 714, 722 (Tex. Crim. App. 2006). We review the decision to admit evidence for an abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App 2005). The erroneous admission of evidence is not reversible absent a showing that it affected the defendant's substantial rights. *Kirby v. State*, 208 S.W.3d 568, 574 (Tex. App.—Austin 2006, no pet.).

Mescher objected at trial to the relevance of Faber's testimony regarding Mescher's mode of dress. Objecting to the relevance of this testimony did not preserve Mescher's appellate complaint that unfair prejudice from this testimony substantially outweighed its probative value. *See* Tex. R. App. P. 33.1; *Sony v. State*, 307 S.W.3d 348, 356 (Tex. App.—San Antonio 2009, no pet.); *see generally Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). Mescher has not demonstrated that the jury based its sentencing decision even in part on Faber's criticism of her attire. Other, relevant evidence spoke powerfully for each side's case. Although the jury assessed the maximum sentence for each of the four offenses of injury to a child, it assessed sentences toward the lower end of the two- to twenty-year range prescribed for the more serious offenses. The admission of Faber's criticisms of Mescher's clothing choices did not affect Mescher's substantial rights, whatever its relevance.

**CONCLUSION**

Finding no reversible error, we affirm the trial court's judgment.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed: July 12, 2012

Do Not Publish