

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00628-CR

BRITTANY OLIPHANT-ALSTON
A/K/A BRITTANY NICHOLE
OLIPHANT-ALSTON A/K/A
BRITTANY ALSTON
APPELLANT

V.

THE STATE OF TEXAS
STATE

----------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

----------

**AND**

### NO. 02-12-00642-CR

JUSTIN LEE ALSTON
APPELLANT

V.

THE STATE OF TEXAS
STATE

----------

----------

# MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellants Brittany Oliphant-Alston and Justin Lee Alston were tried together for causing serious bodily injury to a child. A jury convicted appellants and assessed each of their punishments at 60 years' confinement. The trial court sentenced appellants accordingly. In two issues, each appellant argues that the trial court abused its discretion by (1) admitting photographs over their rule 403 objections and (2) allowing a witness to testify in violation of the Rule.[2] Because appellants were tried together and raise the same issues—albeit in two separate briefs—on appeal, we will address their issues in one opinion.

## II. FACTUAL BACKGROUND

Riley Alston is appellants' son. When he was just over eight months old, he was hospitalized with severe dehydration and malnutrition. Although the long-term effects of his malnourishment are unknown, Riley has made a full nutritional recovery.

---

[1]*See* Tex. R. App. P. 47.4.
[2]*See* Tex. Code Crim. Proc. Ann. art. 36.05 (West 2007); Tex. R. Evid. 614.

## A. Riley's Early Development

Riley weighed seven pounds, nine ounces at birth. When Dr. Patricia Jackson performed Riley's initial checkup a month later, he weighed nine pounds, eleven ounces. This two-pound gain indicated normal development. Dr. Jackson examined Riley again for his four-month checkup. Riley weighed fifteen pounds, eleven ounces. He was meeting all the milestones appropriate for his age, including length and weight markers. Riley was not brought in for his six-month checkup, and Dr. Jackson did not see him again while he was in appellants' care.

## B. Appellants' Party

One night when Riley was just over eight months old, appellants had a number of guests over to their house for a party. Megon Rutledge was one of the guests. During the party, Rutledge heard Riley whimpering softly in a back bedroom. Riley was in a playpen that was covered with "brown nasty stuff." Rutledge took him into the living room to clean him up. When she removed Riley's onesie, she saw that his skin was extremely thin and his bones were visible. Rutledge knew something was wrong with Riley and asked another guest, Caleb Fuller, for help. At Rutledge's insistence, Caleb called his father, who worked as a paramedic.

Paul Fuller arrived at appellants' house and saw Riley. He thought Riley needed immediate medical attention. He urged Justin, Riley's father, to take

3

Riley to the hospital that night. Justin refused but agreed to let Paul take Riley. Paul took Riley to Lake Granbury Medical Center.

### C. Riley's Hospitalization

At Granbury Medical, Dr. Kerri Sistrunk treated Riley. Riley weighed around eight pounds, which was approximately half of what he weighed at his last checkup, five months earlier. Dr. Sistrunk diagnosed Riley with severe dehydration and malnutrition. She used an IV to give Riley a saline solution to help with his dehydration. After three days at Granbury Medical, Riley was stable enough to be transported and was moved to Cook Children's Medical Center in Fort Worth.

Riley stayed at Cook Children's for ten days, and Dr. Jamye Coffman treated him there. Riley was then released into the care of foster parents.

### D. Riley's Recovery

Dr. Coffman saw Riley five times over the next four months for checkups. Riley improved continuously after his discharge—the result of being fed consistently. Dr. Coffman testified that the consequences of malnourishment on Riley's development are still unknown but that he has made a full nutritional recovery.

### III. PHOTOGRAPHS OF RILEY

In their first issues, both appellants argue that the trial court abused its discretion by admitting into evidence, over their rule 403 objections, thirty-three

4

photographs of Riley. Appellants contend that the photographs were unfairly prejudicial and needlessly cumulative.

## A. Admissibility of Photographs and Standard of Review

Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger or unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. "Probative value" refers to how strongly a piece of evidence serves to make more or less probable a fact of consequence, coupled with the proponent's need for the item of evidence. *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). The rule favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App.), *cert. denied*, 549 U.S. 1056 (2006). Among the many factors a court may consider in determining whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice are the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close up, whether other means of proof are available, and other circumstances unique to the individual case. *Santellan v. State*, 939 S.W.2d 155, 172 (Tex. Crim. App. 1997); *Long v. State*, 823 S.W.2d 259, 272 (Tex. Crim. App. 1991), *cert. denied*, 505 U.S. 1224 (1992).

5

The admissibility of photographs over a rule 403 objection is within the sound discretion of the trial court. *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995). We will reverse the trial court only upon a clear abuse of discretion. *Rachal v. State*, 917 S.W.2d 799, 808 (Tex. Crim. App.), *cert. denied*, 519 U.S. 1043 (1996); *Montgomery v. State*, 810 S.W.2d 372, 391–92 (Tex. Crim. App. 1991) (op. on reh'g). A trial court does not abuse its discretion so long as its decision to admit or exclude evidence is, in view of all relevant facts, within the zone of reasonable disagreement. *Rachal*, 917 S.W.2d at 808; *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992), *cert. denied*, 507 U.S. 975 (1993); *Montgomery*, 810 S.W.2d at 391–92.

## B. The Trial Court Did Not Abuse Its Discretion by Admitting the Photographs

Appellants were both charged with knowingly causing serious bodily injury to a child. *See* Tex. Penal Code Ann. § 22.04(a)(1) (West Supp. 2013). Appellants pleaded not guilty to the charges.

### 1. The Photographs Were Probative of Whether Appellants Acted Knowingly

To prove that appellants acted knowingly, the State had to show that appellants were aware that their conduct was reasonably certain to cause injury to Riley. *See id.* § 6.03(b) (West 2011). To dispute that they acted knowingly, appellants argued that their actions were merely reckless[3]—a result of their lack

---

[3]Under the child-injury statute, acting with a reckless mental state carries with it a less severe penalty than acting with a knowing mental state. *Id.* § 22.04(e) (West Supp. 2013).

6

of intelligence and maturity. To counter this defensive theory, the State utilized photographs taken of Riley during his hospitalization.

Several witnesses for the State employed the photographs to show the conspicuous nature of Riley's injuries. Dr. Sistrunk, who treated Riley at Granbury Medical, used photographs of Riley's undeveloped body and wrinkled skin to show his extreme dehydration. Dr. Coffman, who treated Riley at Cook Children's, used similar photographs to demonstrate how Riley was "wasting"— meaning he had no fat or muscles.[4] Witnesses also testified that Riley showed signs of being left on his back for long periods. During the testimonies of Dr. Sistrunk, Dr. Coffman, and Paul Fuller, the jury saw photographs depicting Riley's bedsores, red buttocks, and the flatness of the back of his head.

The State offered additional evidence of the conspicuous nature of Riley's condition. Paul testified that when he saw Riley at appellants' home, he thought Riley's condition was life threatening. Rutledge and Caleb Fuller, who were minors at the time of appellants' party, both testified that when they saw Riley, they knew he needed immediate medical attention. A photograph of Riley accompanied each of their testimonies, so that the witnesses could better explain Riley's condition when they found him.

---

[4]On voir dire, Dr. Coffman even explained: "I don't think words adequately express the actual depiction that—what we—what I actually saw. I don't have the words to actually describe what I saw with Riley. . . . So I think the pictures better describe."

7

Thus, the photographs of Riley were strong evidence of the nature of Riley's injuries and were therefore probative of appellants' awareness of Riley's injuries. *See Gigliobianco*, 210 S.W.3d at 641.

### 2. The Photographs Were Probative of Whether Appellants Caused Riley's Injuries

In addition to proving that appellants acted knowingly, the State had to prove that appellants caused Riley's injuries. *See* Tex. Penal Code Ann. § 22.04(a)(1). The penal code provides that "[a] person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." *Id.* § 6.04(a) (West 2011). At trial, appellants argued that the actual cause of Riley's injuries was a preexisting medical condition that prevented him from receiving proper nutrients.

To prove that appellants' actions, rather than a preexisting condition, caused Riley's injuries, Dr. Coffman testified to her treatment of Riley. She said that the only treatment progressing Riley's recovery was regular feeding. To better demonstrate Riley's recovery, she used pictures taken of him during his post-hospitalization checkups; the pictures were taken approximately three days, three weeks, four weeks, two months, and four months after Riley's initial hospitalization. Thus, the photographs were probative to negate appellants'

8

theory that Riley had a medical condition that prevented him from gaining weight. *See Gigliobianco*, 210 S.W.3d at 641.

### 3. The Probative Value of the Photographs Is Not Substantially Outweighed by Unfair Prejudice or Needless Presentation of Cumulative Evidence

Appellants discount the probative value of the photographs by arguing that the State had other compelling or undisputed evidence to show Riley's depleted condition and subsequent recovery. But the court of criminal appeals has rejected the premise that visual evidence accompanying oral testimony is either cumulative of oral testimony or of insignificant probative value. *See Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 1082 (2000). To the contrary, the court has recognized that visual evidence accompanying testimony is most persuasive and often gives the factfinder a point of comparison against which to test the credibility of a witness and the validity of his conclusions. *See id.*

Appellants further argue that the probative nature of the photographs is substantially outweighed in a rule 403 balancing test because the photographs were unfairly prejudicial and needlessly cumulative. We will address each of these arguments in turn.

"Unfair prejudice" refers to a tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one. *Gigliobianco*, 210 S.W.3d at 641. While many of the photographs are unsettling, they show no more than the serious injuries that appellants were charged with

9

causing. *See Sonnier*, 913 S.W.2d at 519 ("[W]hen the power of the visible evidence emanates from nothing more than what the defendant has himself done we cannot hold that the trial court has abused its discretion merely because it admitted the evidence."); *cf. Narvaiz*, 840 S.W.2d at 429–30; *Staley v. State*, 888 S.W.2d 45, 51 (Tex. App.—Tyler 1994, no pet.) ("It is difficult to conceive, after extensive witness testimony concerning the nature and extent of [the victim's] injuries, how a video tape of [the victim] during his recovery period would heighten the passion of the jury to the detriment of Appellant."). The photographs are all three inches by five inches and in color.[5]

In arguing that the photographs were needlessly cumulative, appellants claim that admitting thirty-three photographs was excessive, as many of the photographs are duplicative. But many of the photographs show different parts of Riley's body, revealing the various injuries he suffered. Other photographs show Riley's recovery at four intervals over a fifteen-week period. These photographs also show different parts of Riley's body, detailing his improvement throughout the weeks. We cannot say that the photographs were needlessly cumulative. *See Gallo v. State*, 239 S.W.3d 757, 763 (Tex. Crim. App. 2007)

---

[5]The photographs were projected for viewing by the jury, but the record does not indicate details on the projection of the images, such as their size or where in the courtroom they were projected. Without more, we cannot say that the projections made the photographs unfairly prejudicial. *See Salazar v. State*, 38 S.W.3d 141, 152–53 (Tex. Crim. App.), *cert. denied*, 534 U.S. 855 (2001); *Bakre v. State*, No. 05-97-00991-CR, 1999 WL 652501, at *2 (Tex. App.—Dallas Aug. 27, 1999, no pet.) (not designated for publication).

(affirming admission of twenty-three autopsy photographs taken from various angles and showing victim's different injuries), *cert. denied*, 553 U.S. 1080 (2008); *Williams v. State*, 930 S.W.2d 898, 901–02 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (affirming admission of autopsy photograph because it was the only one to show the injuries to victim's groin and buttocks); *cf. Staley*, 888 S.W.2d at 51.

Because the photographs were probative of appellants' guilt, and their probative value was not outweighed by any unfair prejudice or needless presentation of cumulative evidence, we hold that the trial court did not abuse its discretion by admitting the photographs. *See Rachal*, 917 S.W.2d at 808; *Narvaiz*, 840 S.W.2d at 429; *Montgomery*, 810 S.W.2d at 391–92. We overrule each of appellant's first issue.

## IV. CAROL MAHAGAN'S TESTIMONY

In their second issues, both appellants contend that the trial court erred by allowing a witness to testify in violation of the Rule. *See* Tex. Code Crim. Proc. Ann. arts. 36.05, 36.06 (West 2007); Tex. R. Evid. 614.

### A. The Rule and Standard of Review

The Rule provides for the exclusion of witnesses from the courtroom during trial. Tex. Code Crim. Proc. Ann. art. 36.05; Tex. R. Evid. 614. The purpose of the Rule is to prevent corroboration, contradiction, and the influencing of witnesses. *Minor v. State*, 91 S.W.3d 824, 829 (Tex. App.—Fort Worth 2002, pet. ref'd). The trial court is obligated to exclude witnesses from the courtroom

11

during another witness's testimony, but the court's decision to allow testimony from a witness who has violated the Rule is discretionary. *Id.* (citing *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 827 (1997)).

A trial court abuses its discretion if two conditions are met: (1) the witness had personal knowledge of the offense and either party could have anticipated calling the witness to the stand; and (2) the witness actually heard testimony from another witness and then contradicted or corroborated that witness's testimony. *Bell*, 938 S.W.2d at 50 (citing *Webb v. State*, 766 S.W.2d 236, 240 (Tex. Crim. App. 1989)); *Guerra v. State*, 771 S.W.2d 453, 474–75 (Tex. Crim. App. 1988), *cert. denied*, 492 U.S. 925 (1989).

If the trial court abused its discretion, we must determine whether the error requires reversal. *See* Tex. R. App. P. 44.2. Appellants complain about the violation of an evidentiary rule, so any error is non-constitutional and will be disregarded if it did not affect appellants' substantial rights. *See* Tex. R. App. P. 44.2(b); *Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

12

In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56.

## B. Even Assuming that the Trial Court Abused Its Discretion by Allowing Mahagan to Testify, Appellants' Substantial Rights Were Not Affected

The trial court invoked the Rule at the beginning of trial and admonished all testifying witnesses that they could not be present during the testimony of other witnesses. During the punishment phase, defense counsel called Justin's grandfather, Danny Trotter, to testify. Trotter testified that after Child Protective Services (CPS) got involved in Riley's case, Trotter attended a family-group conference to discuss Riley's long-term welfare with other interested parties. On cross-examination, Trotter denied that during the conference, he had commented that CPS's photographs of Riley appeared doctored to make Riley's condition look worse.

In response, the State called as a rebuttal witness at the punishment phase Carol Mahagan, who was Riley's Court Appointed Special Advocate (CASA). Mahagan was not among the witnesses admonished at the beginning

of trial, and she remained in the courtroom throughout the guilt-innocence phase. She was not in the courtroom during the punishment phase.

As Riley's CASA, Mahagan attended the same conference that Trotter attended. She testified that at the conference, Trotter said he did not want to see the "fabricated" photographs of Riley. The State also asked Mahagan about the photographs. She described her reaction as "disbelief" and complete shock at the severity of Riley's malnutrition.

Because Mahagan attended the guilt-innocence phase, she heard witnesses, such as Megon Rutledge, Paul Fuller, and Dr. Sistrunk, testify to their reactions to first seeing Riley. Appellants contend that, in explaining her own reaction to seeing photographs of Riley at the conference, Mahagan was improperly allowed to simply echo the previous testimony she had heard.

Assuming without deciding that the trial court abused its discretion by allowing Mahagan to testify in violation of the Rule, appellants' substantial rights were not affected. *See* Tex. R. App. P. 44.2(b). In assessing appellants' punishments, the jury had a plethora of information concerning the photographs that were the subject of Mahagan's testimony. The photographs themselves were admitted into evidence. Additionally, when Mahagan was out of the courtroom during the punishment phase, two witnesses testified about their reactions to the photographs of Riley. Jennifer Ferriera, Justin's mother, testified that she "cried like a baby" when she saw the photographs. And Danny Trotter, whose testimony Mahagan rebutted, said that upon seeing the photographs he

14

was devastated and that it still hurt to think about seeing Riley in that condition. Moreover, the State did not mention Mahagan's testimony during its closing summation or otherwise emphasize the testimony.

We conclude that, in the context of all the evidence admitted during the punishment phase of trial, even if the trial court abused its discretion by admitting Mahagan's testimony in violation of the Rule, her testimony did not have a substantial or injurious effect on the jury's assessment of punishment and did not affect appellants' substantial rights. *See King*, 953 S.W.2d at 271. Thus, we disregard any error and overrule both appellants' second issues. *See* Tex. R. App. P. 44.2(b).

## V. CONCLUSION

Having overruled each appellant's two issues, we affirm the trial court's judgments.

SUE WALKER
JUSTICE

PANEL:  GARDNER, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  November 27, 2013

15