

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00084-CR

_____

ROBERT LEE THOMPSON, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CR19503

Before Gabriel, Kerr, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

**MEMORANDUM OPINION**

## I. Introduction

A jury found Appellant Robert Lee Thompson guilty of aggravated assault with a deadly weapon, assessed his punishment at seven years' confinement, and recommended probation. *See* Tex. Penal Code Ann. § 22.02(a)(2). The trial court suspended the sentence; placed Appellant on community supervision for eight years; and as a condition of his community supervision, ordered Appellant to serve sixty days in jail on the weekends. In five issues, Appellant argues that the trial court abused its discretion by failing to grant a mistrial on allegedly improper jury argument, erred by allowing a reasonable doubt instruction in the charge and by failing to add "no duty to retreat" language to the application portion of the charge, and abused its discretion by admitting two exhibits that allegedly constituted improper impeachment and that contained hearsay. Because we hold that the trial court did not abuse its discretion or commit reversible error with regard to any of the five issues raised by Appellant, we affirm.

## II. Background

The events in question took place on a property located in Paradise, Texas. The record reflects that the property had several "living structures" on it, including a camper and three mobile homes. The residents of the property included Rhonda Deering, her brother, her mother, and her boyfriend Douglas Robinson Jr. (who was referred to as Wayne).

During the afternoon on August 23, 2016, Rhonda rode with her cousin Tina to pick up Appellant (who was Tina's boyfriend), and the three of them went to a funeral in Lake Worth. After the funeral, they picked up dinner and then stopped at a convenience store where Appellant purchased a twelve-pack of Dr. Pepper and some ice, believing that he could borrow an ice chest from Rhonda. The group then returned to Rhonda's camper around 10:30 p.m.

When Rhonda went to retrieve the ice chest, Wayne came out of the outside bathroom wearing only a pair of shorts and boxers and told Appellant that "he's not getting . . . nothing that belongs to [me]" and that he needed to leave.[1] Appellant continued to wait for the ice chest. Wayne then retrieved a twelve-gauge shotgun from the camper and fired a round into the burn pit in the front yard. Wayne attempted to scare or intimidate Appellant into leaving even though the shot Wayne fired was in the opposite direction of Appellant. Appellant "mouthed a few words,"[2] and Wayne put the gun back in the camper and returned to the porch unarmed.

At that point, Appellant said to Wayne, "[W]hy don't you come down here, big boy[.]" Wayne jumped off the porch, approached Appellant, and attempted to put his hand on Appellant's shoulder to escort him to the truck to leave, but they both started

---

[1]Wayne and Appellant had a strained relationship, and Rhonda's parents had previously told Appellant that he was not allowed on the property because some money had gone missing on one occasion when he was present.

[2]Rhonda testified that it did not appear that Appellant was worried about Wayne's firing the shotgun.

3

fighting and ended up on the ground. Wayne and Appellant had each other in a headlock, and Wayne kept saying, "[L]et me up," because Appellant was on top of Wayne. Appellant said, "[Y]ou're dead," or, "[T]oo late, you're dead." Appellant had stabbed Wayne in the abdomen with a knife. Appellant then allowed Wayne to stand up, and as soon as he did, his intestines came out of his body and fell into his hand. As Wayne was walking away from Appellant and telling Rhonda that he needed to go to the emergency room, Appellant stabbed Wayne in the back. Appellant then went to his truck and left with Tina.

Rhonda started driving Wayne to the hospital and called 911. The dispatcher told her to stop at a specified intersection, and a medic and the police met her there. An ambulance transported Wayne the rest of the way to the hospital where he underwent surgery for his life-threatening injuries.[3] At 11:45 that evening, Rhonda wrote out a statement for the police describing the events that had transpired on the property.

Two officers—Investigator John Polhemus Jr. and Lieutenant Pat Golden—met with Appellant after midnight to get his side of the story, which changed several times. During the State's case in chief, Investigator Polhemus recounted the various stories that Appellant had told them. Appellant initially said that he and Wayne were in a physical fight "that went to the ground" and that when Wayne stood up, it

---

[3]The record revealed that in addition to a small stab wound to his back, Wayne had sustained two lacerations to the duodenum (upper colon).

4

appeared that he had been stabbed; Appellant claimed that he did not know how Wayne had been stabbed. Appellant next claimed that Wayne had a knife that was out and that he had been stabbed while they were struggling on the ground. Appellant provided another version that was impossible to follow. Appellant then gave a version in which he said that he had his hand on Wayne's knife and felt it go into Wayne's torso while they were fighting. Throughout the interview, Appellant maintained that he did not bring the knife with him, but toward the end of the interview, Appellant admitted that he took a knife with him when he left the scene and that he threw it into a pasture as he and Tina were driving away. Appellant initially said that he did not stab Wayne a second time, but Appellant later admitted that he had stabbed Wayne in the back while Wayne was walking away.

Another officer took pictures of some scrapes on Appellant's elbows and knees but did not call for a medic because none of the scrapes were serious or in need of treatment. Investigator Polhemus opined that the scrapes, as well as the road rash on Appellant's elbows and knees, were more consistent with rolling around on the gravel in the driveway than with defensive injuries (i.e., injuries sustained from trying to protect himself).

A warrant was ultimately issued, and Appellant was arrested. Investigator Polhemus testified that Appellant admitted during a post-arrest interview that he owned the knife at issue and that he had brought it with him on the night when he stabbed Wayne.

5

At trial, Appellant testified that he had always carried a three-inch Winchester knife. Appellant testified that on the night in question, Wayne was not acting normal. Appellant said that he was scared for his life when Wayne came out of the camper with the shotgun. But Appellant admitted that after Wayne had fired the shotgun and had put it away, he told Wayne, "[L]et's settle it like big boys do." Appellant testified that Wayne then came and hit him in the back of the head and that he responded by hitting Wayne. They "went to the ground," and Appellant jumped on top of Wayne. Appellant believed that Rhonda had her gun at her side[4] and that Wayne was reaching up toward Rhonda. Appellant testified that he was scared for his life and that he had "stuck" Wayne. Appellant opined that he had possibly stabbed Wayne twice while they were rolling around on the ground. Appellant testified that he then let Wayne up and that he did not stab him again. Appellant said that Wayne "charged back" at him and that he (Appellant) responded by swinging again. Appellant testified that one or both of the women announced that Wayne had been stabbed and that was when the fight ended because Wayne's "intestines were in his hand." Appellant and Tina then left. Appellant said that he threw the knife, which he claimed had no blood on it, out

---

[4]Rhonda testified that she used to carry a nine-millimeter handgun in a holster on her hip but that she did not have it on her hip on the night in question. Wayne testified that Rhonda wore her holster with the handgun in it when they went to the back of the property to shoot, which happened very seldom; Wayne said that Rhonda did not wear it on a daily basis. Tina and Appellant testified that Rhonda had the gun in a holster on the night in question.

6

the window of the truck as they drove away because he was scared to death and did not know what to do.

Appellant explained that he had initially lied to the police about not having brought the knife with him because he was so scared and had never been interrogated like that before. Appellant further explained that he did not tell the officers that Rhonda had a gun on her person on the night in question because he was not asked that question and because he was terrified of what he had done.

After hearing the above evidence, the jury found Appellant guilty of aggravated assault with a deadly weapon. This appeal followed.

### III. Jury Argument

In his first issue, Appellant argues that the trial court abused its discretion by failing to grant a mistrial based upon allegedly improper jury argument that occurred during the guilt-innocence phase.

### A. The Complained-of Portion of the Argument

The relevant portion of the State's rebuttal is as follows:

Can you possibly believe him?

> The first lie, I don't know what happened. I don't know. We were rolling around on the ground and got stabbed. Second one, well, Wayne came at me with a knife[,] and I grabbed his hand. And we were rolling around on the ground[,] and I guess he got stabbed. Okay. That doesn't -- that doesn't really make sense. Wayne had -- had the knife? Yeah, that -- Wayne had the knife. Where's the knife now? I don't know. Not until after he was arrested did he finally say it was his knife, it was his knife.

You cannot believe him. You don't get self-defense when you take a knife to a fistfight. This isn't a gunfight. It was not immediately necessary to protect himself. It's got to be immediate. That's the whole crux. Life is important. Life is sacred.

Now, and -- and -- and I'm not asking you -- you don't -- you don't have to like Wayne. You don't have to like Rhonda. You don't have to like their lifestyle. But you've taken an oath, and that is to follow the law. And the law is clear. He's not entitled to self-defense.

THE COURT: Got two minutes.

[PROSECUTOR]: Thank you, your Honor.

He is absolutely not entitled to self-defense. Now, if you don't like Wayne and you think maybe Wayne somehow bears some responsibility or some involvement, that's fine. I certainly wouldn't quarrel with you. *But the appropriate place to take that blame or responsibility is then in the punishment part of the trial.*

[DEFENSE COUNSEL]: Your Honor, I'm going to object. That's improper argument to start talking about punishment during the closing of a guilt/innocence. That's absolutely improper.

THE COURT: Ladies and gentlemen, first of all, what -- of course, what the lawyers say is not evidence, and what the lawyers say is not -- doesn't have anything to do with the charge. And, of course, the jury is -- is instructed that you're not to in any way consider punishment in determining your verdict.

So please continue.

[DEFENSE COUNSEL]: And, your Honor, because the law requires me, I'm going to request a mistrial.

THE COURT: Overrule the objection. [Emphasis added.]

8

## B. Standard of Review

To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to opposing counsel's argument; or (4) plea for law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011); *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992).

When a trial court sustains an objection and instructs the jury to disregard improper argument but denies a defendant's motion for a mistrial, the issue is whether the trial court abused its discretion by denying the mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004). A mistrial is required only in extreme circumstances: when the improper argument causes incurable prejudice—that is, the argument is "so prejudicial that expenditure of further time and expense would be wasteful and futile." *Id.* at 77; *see also Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003). In determining whether a trial court abused its discretion by denying a mistrial, we balance three factors: (1) the severity of the misconduct (prejudicial effect); (2) curative measures; and (3) the certainty of conviction absent the misconduct. *Hawkins*, 135 S.W.3d at 77; *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g).

## C. Applicable Law

It is generally improper for the State to comment on punishment during the guilt-innocence stage of the trial. *See McClure v. State*, 544 S.W.2d 390, 393 (Tex. Crim.

9

App. 1976); *Cherry v. State*, 507 S.W.2d 549, 549 (Tex. Crim. App. 1974). However, not every reference to punishment at the guilt-innocence stage is improper. *Wright v. State*, 178 S.W.3d 905, 930 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (citing *Mann v. State*, 718 S.W.2d 741, 744 (Tex. Crim. App. 1986)).

## D. Analysis

Here, even if we were to assume that the complained-of remark was improper, we disagree with Appellant's position that the trial court's curative measures were "wholly inadequate." In determining the severity of the misconduct, we look at the magnitude of the prejudicial effect and whether the misconduct was extreme or manifestly improper. *See Hawkins*, 135 S.W.3d at 77. In the case before us, the prosecutor's complained-of argument, on its face, did not suggest that the jury should disregard the facts of the case, nor—contrary to Appellant's argument—did it tell the jury that it should not consider Appellant's claim of self-defense until the punishment phase of the trial. Instead, throughout the State's closing arguments, the prosecutors focused on the testimony provided by the witnesses and asked the jury to determine the credibility of Appellant's various versions of what had occurred on the night in question. On this record, we conclude that the severity of the alleged misconduct was neither extreme nor manifestly improper. *See Jones v. State*, No. 05-15-01012-CR, 2017 WL 3275995, at *9 (Tex. App.—Dallas July 25, 2017, pet. ref'd) (mem. op., not designated for publication) (concluding that the severity of the prosecutor's

10

misconduct was neither extreme nor manifestly improper when the prosecutor told the jury to save its sympathy for punishment).

As to the certainty of conviction absent the misconduct, Appellant argues, "Had the self-defense argument of Appellant not been nullified by the comments made by the [S]tate in closing arguments, the jury could have easily acquitted on the issue of self-defense." However, the record includes evidence that although Wayne had initially fired a shotgun into a burn pit in the front yard (i.e., in the opposite direction of Appellant), Wayne had returned the gun to the camper before the fight with Appellant ensued. Because Wayne was unarmed when the two began engaging in physical combat, Appellant was not justified in using deadly force against Wayne. *See generally Bundy v. State*, 280 S.W.3d 425, 435 (Tex. App.—Fort Worth 2009, pet. ref'd) (stating that appellant's use of deadly force was not a justifiable response to victim's attempted punch, which was not deadly force). Thus, the facts—rather than the prosecution's argument—provided a basis for the jury to conclude that Appellant did not act in self-defense.

Finally, the trial court's curative measures included instructing the jury (1) that what the lawyers said was not evidence and (2) that they were not to consider punishment in determining their verdict. Additionally, the jury charge for the guilt-innocence stage of trial stated in part, "[I]n determining the guilt or innocence of the Defendant, you shall not discuss or consider the punishment, if any, which may be assessed against the Defendant in the event he is found guilty beyond a reasonable

11

doubt." Nothing in the record suggests that the jury failed to follow the trial court's instructions. *See Jenkins v. State*, 493 S.W.3d 583, 616 (Tex. Crim. App. 2016) (stating that the jury is presumed to have understood and to have followed the trial court's instructions absent evidence to the contrary).

On this record, we hold that the trial court did not abuse its discretion by denying Appellant's motion for mistrial. *See Jones*, 2017 WL 3275995, at *10. Accordingly, we overrule Appellant's first issue.

## IV. Jury Charge

In his second and third issues, Appellant challenges additions to and omissions from the jury charge. Because these two issues utilize the same standard of review, we set forth the standard only once and then address each issue in turn below.

## A. Standard of Review

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends. *Id.*

## B. Inclusion of a Reasonable Doubt Instruction in the Charge Was Permissible

In his second issue, Appellant argues that the trial court reversibly erred when it included a reasonable doubt instruction in the jury charge.

12

## 1.  The Charge

Page 7 of the jury charge contains the following:

The prosecution has the burden of proving the Defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the Defendant. *It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecutor's proof excludes all reasonable doubt concerning the Defendant's guilt.* [Emphasis added.]

## 2.  The Objection

During the charge conference, Appellant objected to the inclusion of the last sentence set forth above regarding reasonable doubt:

[DEFENSE COUNSEL]:  On Page 7 of the State's jury instruction, second paragraph, when it talks about the prosecution has the burden of proving Defendant guilty, I believe that their final sentence it's not required that the prosecution prove all -- prove guilt beyond all possible doubt -- it is required that the prosecutor's proof excludes all reasonable doubt. *That is attempting to define reasonable doubt for the jury,* and I believe that language needs to be stricken, just that last sentence.  Obviously the prosecution has the burden of proving the Defendant guilty, and it must do so by each -- by proving each and every element beyond a reasonable doubt as appropriate, but not that last line.  *He's attempting to define reasonable doubt for the jury.*

THE COURT:  Response?

[PROSECUTOR]:  Judge, I mean, that language has been in every charge. I -- I -- I don't believe that it's -- that is not the [*Geesa*] instruction that was initially approved by the Court of Criminal Appeals, which has now been disapproved by the Court of Criminal Appeals pertaining to [*Geesa*].  That's just -- that's an instruction that we've had since --

[DEFENSE COUNSEL]:  I don't necessarily believe that that's a legal cause to have that part of that instruction in there.  Because that's how we've always done it doesn't make it appropriate.

13

[PROSECUTOR]: No, I understand that. I'm just saying I don't think it is a -- it is not a definition. It is not an instruction. It is just --

[DEFENSE COUNSEL]: If the prosecution wants to comment on that in his closing argument, I think it's fair to do so. But to define it in the charge and try to shift the burden over to the Defense, I think that is attempting to find be[] -- beyond reasonable doubt, and there's -- obviously in direct contrast to what the law says, which it's up to the jury's province to define reasonable doubt for each and every person.

. . . .

THE COURT: Okay. I'm going to overrule. [Emphasis added.]

### 3. Analysis

Here, the sentence that Appellant complains of is not a definition but rather an instruction. *See Minor v. State*, 91 S.W.3d 824, 828–29 (Tex. App.—Fort Worth 2002, pet. ref'd). Moreover, the Texas Court of Criminal Appeals has previously reviewed the exact sentence that Appellant complains of and has repeatedly held that the trial court does not err by giving such an instruction. *See Mays v. State*, 318 S.W.3d 368, 389 (Tex. Crim. App. 2010); *Woods v. State*, 152 S.W.3d 105, 115 (Tex. Crim. App. 2004). We therefore overrule Appellant's second issue.

### C. Language Regarding "No Duty to Retreat" Was Not Required in the Application Section

In his third issue, Appellant argues that the trial court erred by failing to include "no duty to retreat" language in the application paragraph of the jury charge, even though the abstract portion of the charge contained that very language.

14

## 1. The Charge

The jury charge contained the following:

### IV.

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the Defendant, ROBERT LEE THOMPSON, on or about the 23rd day of August, 2016, in the County of Wise, and State of Texas, did then and there knowingly or recklessly cause bodily injury to Douglas Robinson, Jr. by stabbing Douglas Robinson, Jr. with a knife, and the Defendant did then and there use or exhibit a deadly weapon, to-wit: a knife, during the commission of said assault, then you will find the Defendant guilty of the offense of Aggravated Assault with a Deadly Weapon.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the Defendant not guilty.

### V.

Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree that he reasonably believes the force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force. The use of force against another is not justified in response to verbal provocation alone or if the actor provoked the other's use of force.

A person is justified in using deadly force against another if he would be justified in using force against the other in the first place, as above set out, and when he reasonably believes that such deadly force is immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force.

. . . .

By the term "deadly force[,"] as used herein, is meant force that is intended or known by the person using it to cause, or in the manner of its use or intended use is capable of causing death or serious bodily injury.

15

. . . .

A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used, *is not required to retreat before using deadly force to defend himself. If you find from the evidence that the Defendant was such a person, or if you have a reasonable doubt thereof, in determining whether the Defendant reasonably believed that the use of deadly force was necessary, you may not consider whether the Defendant failed to retreat.*

When a person is attacked with unlawful deadly force, or he reasonably believes he is under attack or attempted attack with unlawful deadly force, and there is created in the mind of such person a reasonable expectation or fear of death or serious bodily injury, then the law excuses or justifies such person in resorting to deadly force by any means at his command to the degree that he reasonably believes immediately necessary, viewed from his standpoint at the time, to protect himself from such attack or attempted attack with unlawful deadly force. And it is not necessary that there be an actual attack or attempted attack with unlawful deadly force, as a person has a right to defend his life and person from apparent danger as fully and to the same extent as he would had the danger been real, provided that he acted upon a reasonable apprehension of danger, as it appeared to him from his standpoint at the time, and that he reasonably believed such deadly force was immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force.

In determining the existence of real or apparent danger, you should consider all the facts and circumstances in evidence before you, all relevant facts and circumstances surrounding the use of force or deadly force, if any; the previous relationship existing between the Defendant and Douglas Robinson, Jr.; together with all relevant facts and circumstances going to show the condition of the mind of the Defendant at the time of the alleged offense. In considering such circumstances, you should place yourselves in the Defendant's position at that time and view them from his standpoint alone.

16

## VI.

*Now bearing in mind the foregoing instructions*, if you believe from the evidence beyond a reasonable doubt, that the Defendant, ROBERT LEE THOMPSON, on or about the 23rd day of August, 2016, in the County of Wise, and State of Texas, did then and there knowingly or recklessly cause bodily injury to Douglas Robinson, Jr. by stabbing Douglas Robinson, Jr. with a knife and the Defendant did then and there use or exhibit a deadly weapon, to-wit:  a knife, during the commission of said assault, then you will find the Defendant guilty of the offense of Aggravated Assault with a Deadly Weapon, but you further find from the evidence, or you have a reasonable doubt thereof that, at the time of the alleged offense, the Defendant reasonably believed that from the words or conduct, or both, of Douglas Robinson, Jr., it reasonably appeared to the Defendant, as viewed from his standpoint, that his life or person was in danger and there was created in his mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force by Douglas Robinson, Jr., and that acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself against Douglas Robinson, Jr.'s use or attempted use of unlawful deadly force, he stabbed Douglas Robinson, Jr., then you will find the Defendant not guilty of the offense of Aggravated Assault with a Deadly Weapon as charged in the Indictment.

## VII.

If you find from the evidence beyond a reasonable doubt that at the time and place in question the Defendant did not reasonably believe that he was in danger of death or serious bodily injury, or that the Defendant, under circumstances as viewed by him from his standpoint at the time, did not reasonably believe that the degree of force actually used by him was immediately necessary to protect himself against Douglas Robinson, Jr.'s use or attempted use of unlawful deadly force, then you should find against the Defendant on the issue of self-defense. [Emphasis added.]

17

## 2. The Objection

During the charge conference, Appellant requested that the trial court add language regarding "no duty to retreat" to the application section:

[DEFENSE COUNSEL]: I would ask that the State add in their application section the language including no duty to retreat. I saw it in the definition section, but I didn't see it in the application section.

[PROSECUTOR]: Judge, on the bottom of Page 4[,] I think it's included in -- in -- I mean, I think it's -- it's in the instruction, and it is in --

[DEFENSE COUNSEL]: It's in the definition, but you don't have it in the application.

*THE COURT:* So how are you proposing to word it, then, [defense counsel]?

[DEFENSE COUNSEL]: That if the jury believes that Robert Thompson had a right to be present at the location where the force was used and he has not provoked the person against whom the force is used and he is not engaging in criminal activity at the time the force is used, it is not required of him to retreat before force -- before using force. And in determining whether an actor described by that section reasonably believes the above use of force was necessary, a finder of fact may not consider whether the actor failed to retreat.

*THE COURT:* You want all of that in the application?

[DEFENSE COUNSEL]: Yes, because I think that in this case, as far as the self-defense goes, I think that's a very necessary application to the self-defense. If the jury believes that the Defendant was required to retreat, that goes against what the law says in the self-defense definitions. He has no duty to retreat if they find that he had a right to be there and he wasn't committing criminal activity and he believed that the force was reasonably necessary.

[PROSECUTOR]: I think -- I think they can just argue that. I mean, it's in the charge. It's in the instructions. I don't think it would

18

be necessary to be in the application paragraph. All that -- all that language is already there on Page 4.

THE COURT: As it -- as I understand the way you would want to submit it, I think that could be confusing to the -- to the jury.

[DEFENSE COUNSEL]: In applying the actual statute in the law section where the Court is instructing the jury, this is how they apply that law that the Court's provided. Because the way that the jury charges have always been constructed is definitions and application, and the application is where the Court provides the -- the jury with the facts applied to that statute. And that's all I'm asking to do is have the Court apply that -- those facts to that part of the statute which is included in the definition section but not in the application section of this charge.

. . . .

THE COURT: Okay. Sorry. I just wanted to make sure. I'll deny that request as -- as you requested it --

[DEFENSE COUNSEL]: I'm going to --

THE COURT: -- that instruction.

[DEFENSE COUNSEL]: -- ask for a running objection to that, Judge.

THE COURT: All right.

[PROSECUTOR]: Judge, and I'm just citing to Morales versus State, Texas Criminal Appeals 2011, 357 S.W.3d: No language in self-defense statute is amended in 2000. Calls for determining as a general matter whether a duty to retreat exists.

I -- I haven't read the case, but it seemed to imply that -- going to the issue of what the jury has to make a determination, whether in fact someone retreated or did not retreat. And I'm not going to object at them -- the Defense telling them what the law is because that's contained in this.

THE COURT: It's in the instruction?

19

[PROSECUTOR]:  Yes, sir.

*THE COUR*T:  Okay.  All right.

### 3. Applicable Law

The application paragraph explains to the jury in concrete terms how to apply the law to the case's facts.  *Yzaguirre v. State*, 394 S.W.3d 526, 530 (Tex. Crim. App. 2013).  Preserved error in the charge's application paragraph is subject to the usual *Almanza* harm analysis.  *Vasquez v. State*, 389 S.W.3d 361, 363 (Tex. Crim. App. 2012) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)).  When the trial court gives a definition or an instruction on a theory of law in the charge's abstract portion, the application paragraph must (1) specify all of the conditions to be met before the jury may convict under that theory, (2) authorize a conviction under conditions specified by other paragraphs of the jury charge to which the application paragraph necessarily and unambiguously refers, or (3) contain some logically consistent combination of those other paragraphs.  *Id.* at 367 (quoting *Plata v. State*, 926 S.W.2d 300, 304 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)).  If the application paragraph necessarily and unambiguously refers to another paragraph of the charge, then a conviction is authorized; the trial judge need not sua sponte "cut and paste" that definition into the application paragraph.  *Id.*

Texas Penal Code sections 9.31(e) and 9.32(c) provide:

> A person who has a right to be present at the location where the force[, or deadly force] is used, who has not provoked the person against whom the force[, or deadly force] is used, and who is not engaged in criminal activity at the time the force[, or deadly force] is used is not required to retreat before using force[, or deadly force] as described by this section.

Tex. Penal Code Ann. § 9.31(e) (setting forth text of self-defense statute as shown by the language quoted above, excluding the bracketed additions), § 9.32(c) (setting forth text of deadly force statute as shown by all of the language quoted above).  Further, sections 9.31(f) and 9.32(d) state that in determining whether the person described in sections 9.31(e) or 9.32(c) reasonably believed that the use of force, or deadly force, was necessary, a factfinder may not consider whether he failed to retreat.  *See id.* §§ 9.31(f), 9.32(d).

## 4. Analysis

Here, Appellant initially argues in his third issue—under the heading labeled "There was error"—that "this case did not contain deadly force" and that there was error in the charge because it did not include the following instructions from the self-defense statute:

> (e)  A person who has a right to be present at the location where the force is used, who has not provoked the person against whom the force is used, and who is not engaged in criminal activity at the time the force is used is not required to retreat before using force as described by this section.
>
> (f) For purposes of Subsection (a), in determining whether an actor described by Subsection (e) reasonably believed that the use of force was

21

necessary, a finder of fact may not consider whether the actor failed to retreat.

*See id.* § 9.31(e), (f). Appellant, however, did not make that specific argument in the trial court. During the charge conference, Appellant's argument focused on the absence of the "no duty to retreat" language from the application section.[5]

Unless a particular statute places a sua sponte duty on a trial court to give an instruction, the trial court generally need not instruct the jury sua sponte on unrequested traditional defenses and defensive issues because they are not "law applicable to the case." *See* Tex. Code Crim. Proc. Ann. art. 36.14; Tex. R. App. P. 33.1; *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013); *see also Oursbourn v. State*, 259 S.W.3d 159, 180 (Tex. Crim. App. 2008). A defendant who fails to ask for an instruction on such issues, or to object to their exclusion, forfeits the alleged error on appeal; thus we do not engage in an *Almanza* egregious-harm review. *See* Tex. R. App. P. 33.1; *Vega*, 394 S.W.3d at 519; *see also Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998); *Almanza*, 686 S.W.2d at 171–74.

Because Appellant did not request the specific section 9.31(e) and (f) instructions he argues on appeal should have been included, he did not preserve his initial argument for review. *See Pruiett v. State*, No. 05-12-00131-CR, 2013 WL

---

[5]Appellant reiterated at the end of the charge conference, "[O]ur additional objections are, one, *adding in the application section of the charge the duty to not retreat*, that you don't have a duty to retreat language, which was denied by the Court[,] and we asked for a running objection to." [Emphasis added.]

1277861, at *2 (Tex. App.—Dallas Feb. 25, 2013, pet. ref'd) (mem. op., not designated for publication) (holding that appellant did not preserve for appeal his issue of whether the trial court erred by failing to include a self-defense instruction in the jury charge).[6]

Appellant argues in the remainder of his third issue—under the heading labeled "The error was harmful"—that his "right to argue self-defense was jeopardized because the lack of [] 'duty to retreat' language (which is specifically spelled out by the statute) was not included in the application paragraph." Appellant's harm argument is based on an alleged error that differs from the one that he asserted at the outset of his third issue. We therefore begin our analysis of this argument by determining whether the absence of the "no duty to retreat" language in the application paragraph constitutes error.

---

[6]Even if Appellant had preserved this argument for our review, he cannot show harm because the record reflects that the trial court included instructions on deadly force, which tracked almost word-for-word the self-defense instructions that Appellant complains were absent from the charge. Moreover, the instructions provided by the trial court were specific to the evidence presented on Appellant's defensive theory and his counsel's closing argument that the use of deadly force, not just "force" as specified in section 9.31(e) and (f), applied to the facts at hand:

And the way you have to look at this, because the way the law requires, is you have to put yourself in [Defendant]'s shoes. Okay? Was [Defendant] justified in using deadly force when and to the degree [Defendant] reasonably believed that deadly force used against Wayne was immediately necessary. And of course I did some checking on the -- on the Code and dealing with the deadly force. And you're not gonna be surprised, but there's no warning shot exemption to the law of deadly force. . . . [N]obody in here is going to deny that -- that using a gun or exhibiting a gun is -- is a use of deadly force.

23

The trial court was not required to repeat verbatim the "no duty to retreat" language from the abstract portion of the charge in the application paragraph. As set forth above, the jury charge contained detailed self-defense instructions and use-of-deadly-force instructions in Section V, which was immediately followed by this language in Section VI, "*Now bearing in mind the foregoing instructions.*" When read as a whole, we conclude that the charge sets forth the law applicable to the case as determined by the allegations in the indictment and the evidence presented at trial and contains an application paragraph authorizing a conviction under conditions specified by other paragraphs of the charge to which the application paragraph refers. *See Reece v. State*, No. 05-09-00392-CR, 2010 WL 3946330, at *2 (Tex. App.—Dallas Oct. 11, 2010, pet. ref'd) (mem. op., not designated for publication) (holding that trial court was not required to repeat in the application paragraph the statutory elements excusing the duty to retreat because the application paragraph referred back to the abstract portion of the jury charge in which the language from section 9.31(e) was set forth); *Holland v. State*, 249 S.W.3d 705, 709 (Tex. App.—Beaumont 2008, no pet.) (holding that the words "in light of the law on self[-]defense as instructed herein" clearly incorporated into the application paragraph the self-defense instructions from the abstract portion of the charge). Moreover, absent evidence to the contrary, we presume the jury followed and understood the instructions. *See Jenkins*, 493 S.W.3d at 616; *Holland*, 249 S.W.3d at 709. We therefore overrule Appellant's third issue.

24

## V. Admission of State's Exhibits 28 and 29

In his fourth and fifth issues, Appellant argues that the trial court abused its discretion by admitting State's Exhibits 28 and 29—videos of his interviews with police before and after his arrest—over his objections that they were being used for improper impeachment and that they contained hearsay.

## A. Standard of Review

We review a trial court's evidentiary rulings under an abuse-of-discretion standard. *See Jenkins*, 493 S.W.3d at 607. A trial judge's decision is an abuse of discretion only when it falls outside the zone of reasonable disagreement. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006).

Generally, the erroneous admission or exclusion of evidence is nonconstitutional error governed by rule 44.2(b) if the trial court's ruling merely offends the rules of evidence. *See Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). "A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the [factfinder], or had but a slight effect." *See* Tex. R. App. P. 44.2(b); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *see also Solomon*, 49 S.W.3d at 365. Moreover, a trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection,

25

either before or after the complained-of ruling.  *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).

## B.  The Evidence

During Appellant's direct examination by defense counsel, he testified that he had talked to the police only once.  On cross-examination, Appellant affirmatively stated that he was not interviewed after he was arrested, and he repeatedly denied that he had been interviewed by the police a second time.  During rebuttal, the State recalled Investigator Polhemus who had testified during the State's case in chief about Appellant's two interviews.  Investigator Polhemus identified the videos of the two interviews:  State's Exhibit 29 contains the interview that Investigator Polhemus and Lieutenant Golden conducted with Appellant shortly after midnight on August 24, and State's Exhibit 28 contains the post-arrest interview that Investigator Polhemus conducted with Appellant on August 25.[7]  When the State offered the two videos into evidence, Appellant objected based on improper impeachment and hearsay.  The trial court admitted the videos over Appellant's objections but granted him a running objection.  The State played State's Exhibit 29—the video of Appellant's initial interview, during which he ultimately admitted stabbing Wayne but repeatedly denied that he had brought the knife with him to the scene.  Although the State did not play

---

[7]The State acknowledged at trial that these two exhibits "probably should have [been] put . . . in [a] different order" because the video reflected in State's Exhibit 29 took place before the video reflected in State's Exhibit 28.

State's Exhibit 28 during the trial,[8] the State did question Investigator Polhemus about the second interview. Investigator Polhemus testified that during the second interview, which lasted approximately five minutes, Appellant admitted for the first time that the knife belonged to him.

## C. Analysis

Assuming, without deciding, that it was error for the trial court to admit State's Exhibits 28 and 29, Appellant cannot show reversible error. As set forth above, the officer who interviewed Appellant both before and after his arrest testified without objection during the State's case in chief about the answers that Appellant gave in response to questions about how the stabbing had occurred, including that Appellant had denied ownership of the knife until the second interview. Because the substance of the videos about which Appellant complains came into evidence without objection during the State's case in chief, Appellant cannot show reversible error from the admission of the videos during the State's rebuttal. *See Vela v. State*, No. 02-16-00330-CR, 2018 WL 2248562, at *5 (Tex. App.—Fort Worth May 17, 2018, pet. ref'd) (mem. op., not designated for publication) (holding that appellant could not demonstrate reversible error because the video's substance had come into evidence without objection during officer's testimony). Accordingly, we overrule Appellant's fourth and fifth issues.

---

[8]The record reflects that the jury sent out a note during their deliberations requesting to review State's Exhibit 28, and it appears that the trial court made the video available for the jury to watch.

27

## VI. Conclusion

Having overruled each of Appellant's five issues, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 15, 2019